Eugenio ALFARO–ORELLANA, et al., individually; and on behalf of others similarly situated, Plaintiffs,

v.

David N. ILCHERT, District Director Immigration and Naturalization Service, Defendant.

No. C–88–4729–CAL.

United States District Court, N.D. California.

Aug. 18, 1989.

Jonathan M. Kaufman, San Francisco, Cal., for plaintiffs.

Joseph P. Russoneillo, U.S. Atty., Susan Kamlet, Sp. Asst. U.S. Atty., San Francisco, Cal., for defendant.

## OPINION AND ORDER

LEGGE, District Judge.

### I.

Plaintiffs are aliens who seek authorization to work in the United States while their applications for asylum are being decided. This action, and these summary judgment motions, require interpretation of the regulations promulgated by the Immigration and Naturalization Service ("INS") which govern the granting of such authorizations to work.

The necessity for interpreting the regulations arises from a recurring problem: Countless aliens are applying for asylum in the United States under section 208(a) of the Refugee Act of 1980; 8 U.S.C. § 1158(a), as amended. The procedures for those applications take considerable time and involve numerous steps before the application is finally approved or denied. The aliens want authority to work in the United States while those procedures are occurring.

The INS regulations on work authorization provide that any alien who files a nonfrivolous application for asylum shall be granted employment authorization during the period of time his application is "pending," including any administrative appeal or judicial review. 8 C.F.R. § 274a.12(c)(8). Plaintiffs interpret the regulation as providing for work authorizations while asylum applications run their full course, from the initial filing until a final decision on appeal. Defendant disagrees, contending that asylum applications, and hence work authorizations, are not "pending" at various stages during the asylum process. The issue to be resolved in this case is therefore when applications for asylum are "pending" under the regulations, so that aliens are entitled to work authorizations.

### II.

Plaintiffs filed applications for asylum, and at the same time applications for employment authorization, with the INS office in this district, pursuant to 8 U.S.C. § 1158(a) and 8 C.F.R. § 274a.12(c)(8). Defendant, the District Director of the INS in this district, determined that their applications for asylum were not frivolous, and he then granted employment authorizations— as he was required to do by the regulations. After then reviewing the applications for asylum, defendant later notified plaintiffs that their applications for asylum were denied, that being the first decisional step in the processing of asylum applications. At the same time, defendant advised plaintiffs that their employment authorizations were terminated. Plaintiffs then filed this action.

Plaintiffs bring the action pursuant to 8 U.S.C. § 1329 and 5 U.S.C. §§ 701–706. Plaintiffs seek interpretation of the regulations regarding work authorization and seek to compel the granting of work authorizations until their applications for asylum are finally determined.

Plaintiffs' applications for asylum are now proceeding through the various steps for review and final determination. Some, but not all, plaintiffs have had their employment authorizations renewed as the asylum process has proceeded. Defendant continues, however, to assert that the regulations do not require the granting of employment authorization during all stages of the asylum process.

This court granted interim relief to plaintiffs by way of a temporary restraining order and a preliminary injunction. This court denied plaintiffs' request for class certification because the basic issue, the interpretation of the regulations, is a matter of law which will be binding on defendant as to all applicants for asylum, and it is not necessary to invoke class action procedures to give either plaintiffs or defendant the benefits and burdens of the court's rulings.

The parties have now made cross motions for summary judgment. Those mo-

tions frame the issue central to the dispute: that is, when during the asylum application process is an application "pending," so that the alien applicant is entitled to work authorization? The court, having reviewed the record in the case, the motion papers, the regulations, the statute under which the regulations were passed, and the applicable authorities, concludes that there are no genuine issues of material fact with respect to the matters set forth below, and that summary judgment must be entered for plaintiffs and against defendant.

### III.

Before discussing the issues of interpretation raised by the parties, the court must first address defendant's argument that plaintiffs' claims are moot and that plaintiffs no longer have standing to advance their claims.

The argument for mootness is based on defendant's assertion it is not now defendant's "current normal practice to revoke previously-granted employment authorization upon his denial of an asylum application." However, this statement, made after the litigation started, is somewhat equivocal. In addition, it is inconsistent with defendant's interpretation of "pending" under the regulations, and with his contention in this case that there is no requirement of work authorization during certain periods of the asylum process. Nor does it answer all of the questions regarding work authorization during other steps in the asylum application process.

Second, defendant asserts that by December 19, 1988, deportation proceedings had been instituted against each plaintiff. Defendant argues that upon the initiation of deportation proceedings, any work authorizations previously granted to plaintiffs under 8 C.F.R. § 274a.12(c)(8) automatically terminated by virtue of 8 C.F.R. § 274a.14(1)(ii). Thus, defendant contends that the claims of the plaintiffs placed in deportation are now moot. However, that regulation is itself ambiguous, because it creates an exception for appropriate work authorizations under § 274a.12(c). And again, it does not govern work authoriza-

tions during other steps in the asylum process.

Further, a well-settled exception to the mootness doctrine is where a defendant's actions are capable of repetition yet evade review. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). *"Grant and Davis* stand for the proposition that voluntary cessation of allegedly illegal activity will not moot an action absent a heavily burdensome showing that 'there is no reasonable expectation that the wrong will be repeated,' and that 'the interim relief or events have completely eradicated the effects of the alleged violation.' " *United States v. City and County of San Francisco*, 656 F.Supp. 276 (N.D.Cal.1987).

In *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court stated that "the capable of repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id.* at 109, 103 S.Ct. at 1669. Plaintiffs make such a reasonable showing here. As discussed below, the aliens placed in deportation can renew their asylum applications before an immigration judge, and can then apply for work authorizations. And, under defendant's interpretation of "pending," plaintiffs would again be subjected to defendant's interpretation of the regulations which will deny them work authorizations at several steps in the asylum process.

Defendant further argues that plaintiffs "lack standing" to challenge defendant's interpretation of § 274a.12(c)(8) once deportation proceedings are instituted. Because plaintiffs have not alleged that any of them have been denied employment authorization subsequent to the institution of deportation proceedings and prior to administrative or judicial appeal, defendant urges that they lack standing to complain. More accurately, defendant contends that their claims are not "ripe" for review, and thus no "case or controversy" exists.

A "ripe" controversy exists where a party has threatened to enforce a statute or regulation against a plaintiff, or by a general showing of active enforcement intentions. *See Buckley v. Valeo*, 424 U.S. 1, 114–117, 96 S.Ct. 612, 680–681, 46 L.Ed.2d 659 (1976) (challenges to the method of appointing members of the Federal Election Commission were ripe, even to the extent that they looked toward "impending future rulings and determinations," where "it was all but certain that the Commission would be exercising its unexercised functions."); *Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1179 (6th Cir.1986) (ripe controversy found to exist where defendant state official had admitted in his answer that he intended to enforce the challenged criminal statute regulating election contributions); *see also* 13A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3532.5 at pp. 175–79 and n. 9.

Here, defendant has stated his interpretation of the regulations and his intention to apply that interpretation throughout the process under which aliens apply for asylum. The court concludes that plaintiffs' claims are not moot, are ripe for review, and that plaintiffs have standing to pursue them. The court now turns to the issues of interpretation.

## IV.

The right to asylum in the United States was created by Congress. In section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a), as amended, Congress directed the United States Attorney General to establish a procedure by which aliens may apply for political asylum. The Attorney General complied with that directive by publishing 8 C.F.R. § 208.[1]

Under those regulations, resolution of asylum applications involves a multi-step and time consuming process:

The first step is for the alien to file an application for asylum with the district di-rector. The district director reviews the application and ultimately makes a ruling on it. Secs. 208.1(a), 208.3. There is no time limit for that review, and it may take a substantial amount of time. If the district director denies the asylum application, the alien does not have an immediate right to seek a review of that denial. Sec. 208.-8(c). The right to review does not occur until and unless the alien is placed in deportation proceedings by the district director. Secs. 208.8(c), 208.9. The district director is vested with discretion, akin to prosecutorial discretion, as to whether to initiate such deportation proceedings. Sec. 208.-8(f)(4).

At such time as deportation proceedings are initiated by the director, the alien can renew his asylum application before an immigration judge. Secs. 208.9, 208.1(b). If the immigration judge denies asylum, the alien may then appeal to the Board of Immigration Appeals. Secs. 3.1(b), 242.21. If the Board of Immigration Appeals denies asylum, the alien has a right of appeal to the United States Court of Appeals. 8 U.S.C. § 1105a. All of those review steps take substantial periods of time.[2]

It is within this multi-step and time consuming asylum process that the issue arises of the alien's right to work pending the completion of the process. Does an alien have a right to work authorization throughout this process, or only during certain stages of the process?

## V.

In the Refugee Act, Congress did not address the question of whether applicants for asylum may work in the United States while their applications are in process. Nor did Congress instruct the Attorney General to adopt regulations pertaining to such employment. Nevertheless, pursuant to 8 U.S.C. §§ 1158(a) and 1103, the Attorney General, through the INS, published regulations on the subject. 8 C.F.R. §§ 274a.12—274a.14.

1. All remaining section references are to 8 C.F.R. unless otherwise noted.

2. At any time the alien may apply for voluntary departure from the United States. §§ 242.5; 244.1.

We are not here concerned with the *validity* of those regulations. Rather, we are concerned with the *interpretation* of the regulations in light of their language, the congressional intent in enacting the statute under which the regulations were promulgated, and the basic objectives of the regulations. In interpreting the regulations, this court acknowledges the deference which it must extend to defendant's interpretation of INS's own regulations. *United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977). However, that deference does not relieve this court of its obligation to interpret the regulations. Construction of regulations is a legal issue and the final determination is a question of law for the courts. *Sierra Club v. Watt*, 608 F.Supp. 305, 330 (E.D.Cal.1985); *See Deukmejian v. United States Postal Service*, 734 F.2d 460 (9th Cir.1984).

In interpreting these regulations, the court does not have the guidance of any relevant decisions of the courts of appeal. The court is, however, assisted by the very thoughtful analysis of the United States District Court for the Eastern District of California (Chief Judge Karlton) in *Diaz v. Immigration and Naturalization Service*, 648 F.Supp. 638 (E.D.Cal.1986), which in part involved the interpretation of similar regulations.[3]

### VI.

The regulations provide that at the initial step in the asylum process—the alien's filing of an application—the director is *required* to issue a work authorization if he determines that the application for asylum is not frivolous. Sec. 274a.12(c)(8) Even if the asylum application is denied by the director and the alien is placed in deportation proceedings, the alien may renew his request for asylum before an immigration judge. If the alien does so, he may again request employment authorization, and that employment authorization *must* be granted if the director determines that the application is not frivolous.[4] Sec. 274a.12(c)(8), Sec. 74a12(c)(13).

Sec. 274a.12(c)(8), in pertinent part, provides:

Employment authorization **shall be granted** in increments not exceeding one year[5] **during the period the application [for asylum] is pending (including any period when administrative appeal or judicial review is pending)....**

*Id.* (emphasis added).

Despite that flat language, the regulations appear to provide that work authorizations should terminate (1) upon the occurrence of certain events, § 274a.14(a); (2) when "it appears that any condition upon which it was granted no longer exists, or for good cause shown," § 274a.14(b)(1)(i); or (3) upon the expiration of the term for which the authorization was granted, 274a.14(a)(1)(i).

In essence, plaintiffs contend that an asylum application is "pending," for purposes of § 274a.12(c)(8), during the entire proceedings on the asylum application. Defendant, on the other hand, contends that the asylum application is "pending" only during the following periods of time: (1) from the time it is filed with the defendant until he renders his decision on the application; (2) from the time the application is properly renewed before the immigration judge until the immigration judge renders a decision; (3) from the time of the filing of a notice of appeal challenging the immigration judge's decision until the Board of Immigration Appeals renders its decision; and (4) from the time a petition for review is filed with the Circuit Court until the Circuit Court issues its mandate. Conversely, defendant contends that the asylum application is "not pending:" (1) once defendant has made his determination

---

**3.** *Diaz* was subsequently dismissed as moot.

**4.** There is an issue as to whether a determination of frivolousness can be made by the district director if he determined that the application was not frivolous at the time of the original filing. That issue is discussed below.

**5.** The record established that defendant does issue some work authorizations for less than one year.

to deny the application for asylum; (2) if the immigration judge denies asylum; and (3) if the Board of Immigration Appeals denies asylum. Defendant's interpretation of the regulations on work authorization parallels his interpretation of when an asylum application is or is not "pending:"

Under defendant's interpretation of the regulations, work authorization may be revoked or terminated by defendant if he denies the asylum application. The alien is then without work authorization for an indefinite period of time, because the alien can take no steps to proceed with his asylum application—and his application for work authorization—until defendant decides whether to initiate deportation proceedings against the alien. After deportation proceedings are initiated, the alien can again apply for asylum and work authorization. But defendant takes the position that he then has the power to make a new determination as to whether the asylum application is frivolous, and hence whether the alien has a right to work authorization.[6] And the defendant contends that he has sixty days to make this determination.

Defendant also takes the position that he can revoke a work authorization (1) if the immigration judge denies asylum and before the alien appeals to the Board of Immigration Appeals, and (2) if the Board of Immigration Appeals denies asylum and before a notice of appeal is filed with the U.S. Court of Appeals. The alien has six months to file such a notice of appeal, and would of course be without work authorization during that time. 8 U.S.C. § 1105a(a)(1). In addition, defendant notes that a work authorization may expire by its own time limitation. This may occur at any time during the asylum process, and indeed even before defendant makes his initial decision on the asylum application.

It is apparent from this review of the asylum and work authorization procedures that, under defendant's interpretation of the regulations, there are extensive periods of time when work authorizations would

*not* be in effect, sandwiched between periods of time when they *are* in effect—and are even *required* to be in effect.

Interpretation and some degree of consistency are obviously needed.

## VII.

One of the basic guides to, and objectives of, interpretation is the intent of Congress. Unfortunately there is very little guidance here. Congress did not expressly require the promulgation of regulations regarding authority to work, and there is no legislative history directly on the issue that is before this court. Nevertheless, certain legislative objectives can be identified, and the regulations may also be tested against related statutory enactments.

By creating an asylum process, Congress obviously intended it to be meaningful. And, by creating a process for asylum applications, the regulations were ostensibly pursuing Congress's objective. The meaningful pursuit of an asylum application is frustrated by a checkerboard pattern of grants and denials of work authorization during that process. Aliens who have bona fide claims for asylum could well be discouraged from pursuing them because of the intermittent inability to pursue lawful employment. It is more reasonable to conclude that Congress desired a more consistent process.

Second, in various portions of the Immigration Act, Congress has addressed its concern over illegal employment. *See e.g.* 8 U.S.C. §§ 1182(a)(14), 1255(c). It is inconsistent with that concern for regulations to be interpreted in such a way that periods of lawful employment could be interspersed with periods of no work authorization when the alien applicants might be forced to seek work illegally.

Congress was also concerned with the role of employers in alien employment. The Immigration Reform and Control Act of 1986 ("IRCA") requires employers to verify the identity and employment authori-

---

**6.** Even though he made a determination at the time of initial filing that the application was not    frivolous.

zation of all persons hired. 8 U.S.C. § 1324a(b). The employer also has an obligation to re-verify an alien's employment authorization should the employment authorization expire. § 274a.2(b)(1)(viii). Thus, both employers and aliens might be subjected to economic and legal sanctions because of their inability to verify the periods of unauthorized work and authorized work.

All of this is underscored by extensive legislative and judicial concern over the right to work generally, and the recognition of its impact upon individuals and upon the country. This concern extends to alien workers and has received constitutional protection. *See Goldberg v. Kelly*, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970).

The present regulations must be viewed in the light of those congressional concerns, and in light of the overall objective of the regulations themselves.

This court concludes that defendant's interpretation of the regulations is inconsistent with congressional objectives and with the purpose of the regulations themselves. The basic objective of the regulations is to provide a workable and consistent set of procedures for the pursuit of asylum applications, and the related work authorizations during the asylum process.

■ The court concludes that the regulations must be interpreted as providing for work authorizations during the entire time that asylum applications are being pursued. Specifically, the term "pending" in section 274a.12(c)(8) must be interpreted as meaning: from the time that the asylum application is first filed and the district director makes his initial determination that the application is not frivolous, and extending thereafter until either the application for asylum is abandoned by the alien or there is a final adverse decision on his asylum application.

### VIII.

Three specific sections of the regulations must be addressed and reconciled with the above interpretation.

The first is section 274a.14(1)(ii), which ostensively provides that work authorization automatically terminates upon the institution of deportation proceedings against the alien. As stated, this section is ambiguous because of its reference back to § 274a.12(c). Even if it applies, the alien's remedy is then to renew his application for asylum before an immigration judge and to again request employment authorization. §§ 274a.14(a)(2), 274a.12(c)(8). This gap in the authorization process can be a short-lived one, because the alien can file the renewal of his asylum application before an immigration judge and request a work authorization as soon as deportation proceedings are instituted. That regulation should be interpreted, in conjunction with the other regulations, as requiring the prompt issuance of work authorization as soon as the alien renews his application before the immigration judge.

Second, defendant contends that under § 274a.13(d) he again has the right to determine whether the application for asylum is frivolous, and that he has sixty days to do so. This court does not believe that interpretation is correct. At the time of granting the initial work authorization, defendant determined that the application was not frivolous. The fact that defendant later denies the asylum request does not necessarily render it frivolous. This court does not believe that § 274a.13(d) gives the director a second opportunity to make a determination contrary to his first determination, and take sixty days to do so. *Accord: Diaz v. INS*, 648 F.Supp. at 655. The court interprets § 274a.13(d) as requiring the district director to act in a manner consistent with his first determination, unless changed circumstances clearly require a different result, and to act promptly.

The final question is what occurs if the employment authorization is terminated, under § 274a.14(a)(1)(i), by expiration of time. Again, this subsection is ambiguous, because the regulation also provides that "automatic revocation under this section does not preclude reapplication for employment authorization under § 274.12(c) of this part." Sec. 274a.14(a)(2). Therefore,

this regulation should also be interpreted, in conjunction with the other regulations, as requiring work authorization to be issued promptly as soon as the alien files his reapplication.

## IX.

■ Plaintiffs urge this court to order defendant to act on the aliens' reapplications for work authority within twenty-four hours. This court has great difficulty with such a request. There are undoubtedly other matters pending before the INS which, for reasons unknown to this court, may require more rapid handling than the applications for work authorization. This court does not believe that it can or should establish a priority list for the performance of defendant's numerous statutory and regulatory responsibilities, or impose short and arbitrary deadlines for the performance of some.

Nevertheless, the court can and does expect that defendant will be sensitive to the applicants' needs for employment authorization and that defendant's administrative procedures will take those needs into consideration. This court can order that the needs for the work authorizations be given due consideration by defendant in determining the order and speed with which it responds to such applications.

The court is therefore ordering that defendant reply "promptly" to such reapplications. And in complying with that requirement of promptness, defendant must give due consideration to the needs of the applicants for work authorizations. To assist defendant in performing this responsibility, it may be appropriate for applicants to specifically state the need and the reason for prompt action.

## X.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment is granted and defendant's motion for summary judgment is denied.