OPINION OF THE COURT
Dominic R. Massaro, J.
In this workplace injury case involving an undocumented political asylum seeker, the parties request pretrial rulings concerning admissibility of certain evidence proffered for trial.
Defendant’s in limine motion seeks to exclude evidence concerning plaintiffs projected future lost wages and/or medical expenses based upon the possibility that the Board of Immigration Appeals (hereinafter BIA)[1] will deny plaintiff political asylum in the United States (see generally Maliqi v Attorney Gen. of U.S., 262 Fed Appx 426 [3d Cir 2008]).
Plaintiff opposes defendant’s motion and seeks a contrary ruling prohibiting defendant from arguing that plaintiffs immigra *184 tion status bars future lost wages and/or medical expenses. Plaintiff also seeks an in limine ruling precluding defendant from claiming that plaintiff is illegally in the United States. In these regards, plaintiff seeks to introduce testimony from an expert in economics concerning plaintiff’s future earnings potential and medical costs and plaintiffs immigration counsel as an expert in immigration law.
The court must consider these applications against a backdrop of political intrigue in Kosovo,[2] the national controversy involving undocumented workers generally, and our Court of Appeals holding in Balbuena v IDR Realty LLC (6 NY3d 338 [2006]). The instant matter presents — apparently for the first time in this state — an alleged workplace injury case involving an undocumented claimant who invokes political asylum protection.
Political Asylum According to testimony during his immigration proceedings (see Maliqi v Attorney Gen. of U.S., supra), plaintiff is an ethnic Albanian who left Kosovo in 2003 and entered the United States via Canada in November of that year without valid documentation. He is presently involved in political asylum proceedings before the BIA that may result in his deportation.
Throughout the decade of the 1990s, Serbian officials arrested plaintiff and detained, threatened and beat him. Later, as part of nationalist incursion by the central Serbian government in March of 1999, Maliqi was forced from Kosovo with other ethnic Albanians.[3] Maliqi relocated to Albania where he remained until United Nations/NATO forces cleared the way for his return three months later.
Plaintiff told Department of Homeland Security agents that upon returning to Kosovo he resumed his political activities with the Democratic League of Kosovo (DLK). Because of this DLK affiliation, Maliqi claimed that twice he was again targeted for persecution. First, while he was monitoring the 2001 elections, “unknown persons” threatened him to quit political activities. Second, he claimed that two years later several Albanian-speaking men entered his taxicab and held a gun to
*185 his head. The men beat Maliqi for several hours, told him to terminate his political activities, and left him unconscious in the street. Maliqi once more left Kosovo because of the last incident, but his wife and four children remain there. For these reasons, plaintiff felt justified in seeking political asylum after entering this country illegally (see 8 USC § 1158).[4]
Immigration Litigation
After plaintiff applied for political asylum, his application for relief was heard by an immigration judge who denied Maliqi’s prayer. The denial was reviewed by the BIA and affirmed. On appeal, the Third Circuit Court of Appeals found that the decisions of both the immigration judge and the BIA were “sufficiently vague, incomplete, and contradictory” so that the appeals court lacked a sufficient basis to properly review Maliqi’s claims (see Maliqi v Attorney Gen. of U.S. at 429). Accordingly, the Third Circuit remanded the case to the BIA for subsequent agency action consistent with the court’s opinion. The appeals court faulted the prior tribunals’ opinions as inadequate regarding denial of political asylum, withholding of removal, and relief sought under the United Nations Convention Against Torture.[5] In regard to the reconsideration, the parties advised this court that the BIA is scheduled to revisit the case in July 2009. Plaintiff did not agree to defendant’s suggestion that this case be continued pending BIA reconsideration.
Employment
After filing for political asylum, plaintiff found employment in the construction industry, working for Fine-Line Building Services, Inc., which hired plaintiff to renovate and to paint the lobby area of the premises located at 17 East 89th Street, New York County. While working for Fine-Line Building Services, plaintiff was injured on June 13, 2006. A large mail cart, being handled by defendant’s employee, fell over upon plaintiff as he painted the baseboard in the hallway of defendant’s building. The instant case followed.
Earlier in the present litigation, the court (Billings, J.) ruled that defendant’s defense, seeking to bar plaintiff from recover *186 ing future lost wages and medical expenses, remained viable, but permitted plaintiff to proceed on lost wages and medical expenses calculated using economic levels in the United States for any period of time that he resided here (see Balbuena v IDR Realty LLC, supra).
Concerning future lost earnings and/or medical expenses, because plaintiff entered this country illegally and plaintiffs application for political asylum was initially denied, defendant says evidence about plaintiffs immigration status is relevant to any recovery. The evidence impacts Maliqi’s future lost wages and medical expenses, especially because defendant argues that an American employer cannot knowingly hire an undocumented person without obtaining proof of proper work authorization (that is, the so-called “green card”).
In response to defendant’s argument that he could not legally be employed, plaintiff maintains that regardless of the legality of employment, any immigration reference would prejudice the jury because of the present national controversy about undocumented aliens employed here.[6] Further, plaintiff says allegations of immediate deportation are untrue. He states that his evidence (including expert testimony) will show that he is legally present in this country. The federal government has instituted no administrative or criminal proceedings against Maliqi, and plaintiff maintains he voluntarily revealed his presence to the Department of Homeland Security with his asylum application. According to plaintiff, he is entitled to asylum under both international and domestic law (see generally Immigration and Nationality Act of 1952 § 252 [codified at 8 USC § 1282]; Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, supra n 5). Because his appeal remains pending, plaintiff says he retains the right to remain in the United States during reconsideration of his BIA case and no negative inference arises from that fact (see generally Yeung v Immigration & Naturalization Serv., 76 F3d 337 [11th Cir 1995]).
Defendant’s Response
Defendant says it cannot be precluded from introducing evidence at trial concerning plaintiffs immigration status because *187 that status rationally impacts any amount a triumphant plaintiff could earn in wages and would need for future medical care, particularly if plaintiff is required to return to his homeland. Obviously, earnings and medical expenses would be significantly less in Kosovo, a factor that defendant feels the jury should consider.[7]
Defendant cites Balbuena v IDR Realty LLC (supra) for the proposition that a jury may consider immigration status when future lost wages are in issue. In Balbuena, the High Court pointed out lack of a “green card” is a factor in assessing total lost wages. Further, defendant relies upon the immigration court’s conclusion that improved political conditions in Kosovo bar political asylum because plaintiff supports the now ruling political party. Given the likely denial of political asylum, any jury determination of future damages based upon costs in the United States would be an unconscionable windfall to plaintiff if he is required to return to his homeland. Doubly compounding this injustice is plaintiffs opposition to adjourning this litigation until the federal immigration proceedings are finalized. Legal Discussion
A motion in limine, by definition, is a “preliminary application,” usually made at the beginning of a trial, that certain evidence, claimed to be inadmissible and prejudicial, not be referred to or offered at trial (see generally Black’s Law Dictionary [7th ed 1999]). Each party requests a ruling to preclude the other from introducing evidence that involves plaintiffs immigration status. Plaintiff argues defendant’s emphasis on the matter of documentation will prejudice the jury against him. Defendant feels that withholding information of plaintiffs illegal entry in the United States could permit an unfair windfall. Each side bases its sought after relief squarely upon the Third Circuit’s opinion in Maliqi v Attorney Gen. of U.S. (supra), which remanded the BIA’s decision adverse to plaintiff for further determination. Because both versions of in limine relief are intertwined, disposition jointly is necessary.
Federal Preeminence
Under the Federal Constitution, the power to regulate immigration rests exclusively with the national government (see *188 US Const, art I, § 8 [4]). Pursuant to this authority, Congress enacted the Immigration and Nationality Act of 1952 (see 8 USC § 1101 et seq.) as a comprehensive federal statutory scheme for regulating immigration. The Act’s purpose is to delineate the terms and conditions of admission to this country and subsequent treatment of aliens lawfully here. This legislation expressed only a “peripheral concern” regarding employment of illegal aliens (see generally Balbuena v IDR Realty LLC at 351). The Act did not make it unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization, or for an alien to accept employment after entering this country illegally.
Keeping federal preemption in mind, Congress provided in subchapter II (“Immigration”) of chapter 12 (“Immigration and Nationality”) of title 8 (“Aliens and Nationality”) of the United States Code, that any alien (irrespective of status) may apply for political asylum as long as he is physically present in the United States or arrives in this country (see generally 8 USC § 1158 [a]). Although section 1158 (a) does not specifically address whether asylum seekers may work while their applications are processed, Department of Homeland Security regulations require work authorizations be issued during the period that nonfrivolous asylum applications are pending. The regulations are construed to permit work authorizations during the entire time that an asylum application is pending (see 8 CFR 274a. 12 [c] [8]; and generally Alfaro-Orellana v Ilchert, 720 F Supp 792 [ND Cal 1989]). The regulations alleviate economic hardship for aliens who would, without them, be unable to lawfully work pending consideration of their asylum applications (see generally Diaz v Immigration & Naturalization Serv., 648 F Supp 638 [ED Cal 1986]). Based upon this regulatory scheme, the court concludes that plaintiff legitimately was employed during the time that he suffered his accident (see generally United States v Bazargan, 992 F2d 844 [8th Cir 1993]).
Turning to plaintiffs request that defendant be barred from arguing that evidence of plaintiffs claimed future lost wages and/or medical expenses must be excluded upon the possibility that the BIA will deny political asylum, the court grants plaintiffs relief to the extent defendant may not suggest to the jury that plaintiffs immigration status prohibits any award of future lost wages or medical expenses. However, plaintiffs immigration condition is relevant in the sense that the jury may consider the economic realties that exist if plaintiff is ultimately *189 not permitted to remain in the United States. The jury may consider the effect on plaintiff’s wage earning ability and required medical care costs in the event he is required to return to his homeland. Likewise, the corollary — defendant’s request that plaintiff be prohibited from introducing evidence concerning future lost wages and/or medical expenses — is denied.
Concerning plaintiffs demand that defendant be precluded from claiming that plaintiff is illegally in the United States, this request is denied, subject to cautionary instruction from the court. Under no circumstances may defendant assert that plaintiff was working illegally at the time of the accident. From the discussion above concerning Department of Homeland Security regulations, the court concludes that plaintiff, in fact, was legally employed while his asylum application was, and is yet, in process. Nevertheless, reference to plaintiffs immigration status is rationally related to his recovery of future lost wages and medical expenses and as such, evidence relevant to this issue will be allowed at trial.
Expert Witnesses
On the question of expert witness testimony, the standard for its admission is whether the expert’s opinion helps to clarify an issue calling for technical knowledge possessed by an expert and beyond that of the typical juror (see generally De Long v County of Erie, 60 NY2d 296 [1983]). Admissibility of expert testimony on a particular issue is within the court’s discretion (see generally People v Cronin, 60 NY2d 430 [1983]).
 Plaintiff requests that the court permit testimony from an economics expert concerning future lost wages and medical costs that plaintiff may incur because of his injuries. Such testimony is relevant here. Expert testimony will be allowed, if otherwise qualified, subject to the court’s qualifying instruction involving costs in the event that plaintiff loses his immigrant status proceeding. The expert testimony will assist the jury in determining an appropriate damages amount should the jury find in plaintiffs favor. Such cannot be said of the proposed expert testimony of plaintiffs immigration counsel. This would be speculative at best and presents issues concerning objectivity. The expert’s conclusion will be of such limited value that its admission serves no purpose.
Plaintiff is not precluded from recovering either lost wages or medical expenses because of his immigration status (see Han Soo Lee v Riverhead Bay Motors, 57 AD3d 283 [1st Dept 2008]). Plaintiffs status as an illegal alien, in and of itself, cannot be *190 used to rebut a claim for future lost wages (see Hocza v City of New York, 2009 WL 124701, 2009 US Dist LEXIS 3574 [SD NY 2009]). As the First Department found in Han Soo Lee (supra), it is a misrepresentation of the law to say that plaintiff is precluded from recovering future lost wages because of immigration status (see also Balbuena v IDR Realty LLC, supra). Working in the United States without proper documentation is neither a crime pursuant to the Immigration and Nationality Act of 1952 (8 USC § 1324a) nor a bar to the recovery of damages in a civil action for personal injuries. To allow a jury to believe otherwise is error and will cause undue prejudice to plaintiff (see Han Soo Lee v Riverhead Bay Motors at 284).
Notwithstanding, the length of time during which plaintiff may continue earning wages in the United States and the likelihood of his potential deportation are factual issues for resolution by the jury (see generally Collins v New York City Health & Hosps. Corp., 201 AD2d 447 [2d Dept 1994] [error to limit evidence of illegal alien’s lost wages to potential earning in India]). Therefore, the jury is, subject to qualifying instructions from the court, permitted to consider the economic effect in the event that plaintiff loses his political asylum case. For the reasons discussed above, plaintiff is allowed to provide economics expert testimony, but may not present testimony from his immigration counsel in the form of expertise.

. The BIA is established as part of the Justice Department’s Executive Office for Immigration Review (see 8 CFR 1003.1 [a]). It is the highest administrative body for interpreting and applying immigration laws and decides appeals by conducting a “paper review” of cases heard before an immigration judge.

. An independent republic since 2008, Kosovo was part of Serbia at the time that plaintiff experienced the acts that form his political asylum claims. Because of ethnic conflicts in the mid-1990s, United Nations/NÁTO security forces intervened.

. According to the Third Circuit, plaintiffs father was killed by Serbian police when unable to evacuate due to illness (see Maliqi v Attorney Gen. of U.S., supra).

. Federal courts have considered numerous political asylum cases during the last two decades (see generally Orantes-Hernandez v Thornburgh, 919 F2d 549 [9th Cir 1990] [class action requiring Immigration and Naturalization Service to inform illegal aliens of right to political asylum]).

. (Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, GA Res 39/46, UN GAOR, 39th Sess, Supp No. 51, UN Doc A/39/51 [adopted Dec. 10, 1984, entered into force June 26, 1987].) This document is also referred to as “CAT.”

. See generally C. Cimini, Ask, Don’t Tell: Ethical Issues Surrounding Undocumented Workers’ Status in Employment Litigation, 61 Stan L Rev 355 (2008); see also L.S. Bosniak, Exclusion and Membership: the Dual Identity of the Undocumented Worker Under United States Law, 1988 Wis L Rev 955 (1988).

. Defendant stresses that plaintiffs economics expert projects future lost wages and medical expenses in United States dollars on the assumption plaintiff remains in the United States. In this regard, defendant advances that the parties stipulate that plaintiff waives any claim for future lost wages or medical expenses if he returns to Kosovo.