Jose Raimundo MADEIRA, Plaintiff,

v.

AFFORDABLE HOUSING FOUNDA-
TION, INC. and Mountain Develop-
ers Associates, LLC Defendants.

Affordable Housing Foundation, Inc.
and Mountain Developers Associates,
LLC Third–Party Plaintiffs,

v.

Cleidson C. Silva d/b/a C & L Construc-
tion and Preferred National Insurance
Co. Third–Party Defendants.

No. 01 CIV. 8779(CM).

United States District Court,
S.D. New York.

April 22, 2004.

Richard Winograd, Ginarte, O'Dwyer, Winograd & Laracuente, New York City, for Plaintiff.

Dennis E.A. Lynch, Dorfman, Lynch & Knoebel, Nyack, NY, Donald Joseph Feerick, Jr., Donald Feerick, New City, NY, for Defendants/ThirdParty Plaintiff.

Susan Smodish, Jeffrey Samel & Partners, Joseph M. Glatstein, Williamson & Williamson, New York City, for ThirdParty Defendant.

MEMORANDUM DECISION AND OR-
DER DENYING THIRD–PARTY
DEFENDANTS' MOTION FOR
NEW TRIAL AND THIRD–PARTY
PLAINTIFFS' MOTION FOR
JUDGMENT NOTWITHSTANDING
THE VERDICT

MCMAHON, District Judge.

This is an action to recover damages for personal injuries sustained by plaintiff Jose Madeira in the course of his work on a construction site in Monroe, NY. The third-party action was thereafter commenced by Affordable Housing, the site owner, and Mountain Developers, the general contractor, for indemnification from plaintiff's employer Cleidson Silva d/b/a C & L Construction. Silva is covered by Preferred National Insurance, which was

dismissed from the case at the close of the evidence.

The case was tried to a jury in two parts over the course of nine days. At the conclusion of Phase I, the jury found that defendants Affordable and Mountain had violated their duties under the "Scaffold Law," New York Labor Law § 240(1), and returned a verdict in favor of plaintiff Jose Madeira for $638,671.63. No issues of negligence on third-party liability were submitted to the jury in Phase I; plaintiff's claim was limited to a § 240(1) "strict liability" claim, and the jury considered only that issue. In the second phase of the trial, the jury determined that Paulo Miranda had entered into an indemnification agreement (DX4) on behalf of C & L Construction, and determined that C & L Construction was 82% liable for Madeira's accident and Mountain and Affordable were each 9% liable.

Third-party plaintiffs and third-party defendant Silva have both submitted post-trial motions for judgment notwithstanding the verdict pursuant to FRCP Rule 50(b). For the following reasons both motions are denied, without need for response from other parties.[1]

**Third–Party Plaintiffs' Motion for A Judgment Notwithstanding the Verdict Pursuant to FRCP 50(b)**

Affordable and Mountain assign four grounds for setting aside the jury verdict. They argue:

First, that the jury's award of lost earnings to the plaintiff Jose Madeira was erroneous because he is an undocumented worker, and therefore ineligible for those damages;

Second, that the jury's apportionment of fault was erroneous because there was no finding of negligence in the "liability" phase of the trial (i.e. Phase I) to support that apportionment;

Third, that the preclusion of proof of lack of insurance was erroneous as a matter of law because, notwithstanding the stipulation that Affordable and Mountain were not additional insureds, there was a breach of the insurance clause of the indemnity agreement;

Finally, that the Court erred in dismissing Preferred, because the third-party plaintiffs were entitled to a defense and indemnity.

*1. Plaintiff's Alien Status Does Not Deprive Him of His Right to Lost Earnings*

Affordable and Mountain argue that, under the Supreme Court's reasoning in *Hoffman Plastic v. NLRB,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), plaintiff is not entitled to back pay and lost wages because such an award is contrary to the Immigration Reform and Control Act ("IRCA"). In *Hoffman,* the Supreme Court reviewed an NLRB award of back pay to alien workers who were terminated because of their participation in organizing a union, in violation of § 8(a)(3) of the National Labor Relations Act. The Court determined that an award of back pay for work not performed was contrary to the purposes underlying the IRCA, because under the IRCA scheme it is "impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies." *Id.,* 147, 122 S.Ct. 1275. Consequently, the Court held that the NLRB could not award back pay to an illegal alien, ruling that such an award was

---

**1.** Pursuant to this court's individual rules, motions for re-argument, reconsideration and new trials are first considered by the Court and only if I so request are responsive papers necessary. *See* Individual Practices of Judge McMahon, 2(G) Motions for Reconsideration.

beyond the Board's remedial discretion and "trivializes" the immigration laws. *Id.*, 150, 122 S.Ct. 1275. Affordable and Mountain also cite two post-*Hoffman* cases in which courts have denied injured workers back pay or lost wages based on *Hoffman. See Majlinger v. Cassino Contracting Corp.*, 1 Misc.3d 659, 766 N.Y.S.2d 332 (2003); *Veliz v. Rental Corp.*, 313 F.Supp.2d 1317, 2003 WL 23355662 (M.D.Fla.2003).

This case involves a claim for relief under New York state law. No federal cause of action is asserted. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) a federal court sitting in diversity applies the substantive law of the state. I therefore look to the law of New York, not the National Labor Relations Act, for guidance.

■ Plaintiff's alien status does not prevent him from recovering compensatory damages for defendants' violation of New York Labor Law. *See Public Admin. of Bronx County v. Equitable Life Assurance Society of U.S.*, 192 A.D.2d 325, 595 N.Y.S.2d 478 (1st Dept.1993)(an illegal alien may sue to recover damages for future lost earnings resulting from tortious injury); *Cano v. Mallory Mgmt.*, 195 Misc.2d 666, 760 N.Y.S.2d 816 (2003) (plaintiff's status is not a bar to recovery, but may be a factual item to be presented to the jury); *Mazur v. Rock–McGraw, Inc.*, 246 A.D.2d 515, 666 N.Y.S.2d 939 (2d Dep't 1998)(neither plaintiff's improper conduct in obtaining his employment nor his status as an illegal alien bar the maintenance of a suit for personal injuries based on asserted violations of Labor Law § 241). In New York, alien plaintiffs are free to establish that their earning capacity has been diminished as a result of an accident. Indeed, a post-*Hoffman* Official Opinion the Attorney General of New York concluded that *Hoffman* does not prevent the New York Department of Labor from enforcing the State's wage payment laws on behalf of illegal immigrants as long as no federal Constitutional or statutory right was implicated. *See* Formal Opinion No.2003–F3, N.Y. Op. Atty. Gen. No. F3, 2003 WL 22522840 (N.Y.A.G. October 21, 2003) *citing Balbuena v. IDR Realty, LLC*, N.Y. L.J., May 28, 2003, at 18 (Sup. Ct. N.Y. County May 16, 2003) (*Hoffman* does not inhibit State court's ability to award lost wages to an illegal immigrant in tort action brought under state common law); *Cano*, 195 Misc.2d 666, 760 N.Y.S.2d 816 (holding under federal law in *Hoffman* does not bar illegal immigrants from using New York State court system to "seek civil redress from alleged tortious conduct").

■ As I instructed the jury, under New York law, plaintiff's alien status is relevant to determining whether lost earnings are appropriate and, if so, how much should be awarded. *See Cano*, 195 Misc.2d at 666, 760 N.Y.S.2d 816. The jury obviously concluded that plaintiff would have obtained employment in the United States, where he has continuously resided since the accident, if he had not been severely injured by his fall. And the fact is, undocumented aliens do obtain work in the United States. Recognizing this incontrovertible fact, New York's public policy does not bar compensation in the form of back pay for undocumented workers who are injured in the manner of the instant plaintiff.

Affordable and Mountain do not clearly indicate whether they challenge only the back pay award (the only issue in *Hoffman* ) or also the front pay award. With respect to the front pay issue, *Hoffman* is irrelevant. The jury was told that it could consider plaintiff's alien status in determining whether he would have continued to work and whether that work would be in the United States or elsewhere. Plain-

tiff's counsel argued to the jury that plaintiff hoped to remain in the United States (and was working on obtaining his documentation), but also told the jury that even if plaintiff were to be deported, he would be unable to work in Brazil. The jury was not required to specify where plaintiff would have earned money in the future, and clearly reached a verdict that he would have been able to earn some money somewhere, be it in the United States or elsewhere, were it not for his accident. The jury's determination will not be set aside.

### 2. The Jury's Apportionment of Fault was Supported by the Evidence

■ Affordable and Mountain argue that, because § 240(1) imposes strict liability, there was no finding of negligence in what they label the "liability" phase of the trial. That being so, they argue that C & L cannot seek to avoid indemnifying third-party plaintiffs on the ground that they were negligent.

This is incorrect. There was no finding of negligence in the first phase of the trial because negligence was irrelevant to plaintiff's claim against Affordable and Mountain under § 240(1). Affordable and Mountain could have been—and were—held liable to plaintiff irrespective of any negligence on their part. Negligence was, however, relevant to Phase II of the trial. The jury was, therefore, asked if Affordable or Mountain were negligent, and, if so, to apportion fault at the conclusion of Phase II.

The indemnification provision provides:

"To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless the General Contractor and Owner against any claims, damages, losses and expenses, including legal fees, arising out of or resulting from performance of subcontracted work to the extent caused in whole or part by the Subcon-

tractor or anyone directly or indirectly employed by the subcontractor."

The jury had to consider the issue of negligence in the second phase of the trial. Indeed, the issue was essential to a finding of the parties' responsibilities under the indemnification agreement. See Agricultural Insurance, Co. v. Ace Hardware Corp., 2003 WL 164272 (subcontractor required to indemnify general contractor for damages excluding that portion of liability attributable to general contractor's negligence); Dutton v. Charles Pankow Builders, Ltd., et al., 296 A.D.2d 321, 745 N.Y.S.2d 520 (indemnification provision requiring subcontractor to indemnify general contractor "to the fullest extent permitted by law" requires partial, not full indemnification.).

Relying on Lazzaro v. MJM Industries, Inc., 288 A.D.2d 440, 733 N.Y.S.2d 500 (2d Dep't 2001), third-party plaintiffs argue that the subcontractor must completely indemnify the owner and general contractor for the liability imposed by § 240(1). That is incorrect. New York General Obligations Law § 5–322.1 voids any indemnification clause to the extent that a party seeks indemnity for its own acts of negligence. Thus, C & L cannot be required to indemnify Affordable and Mountain for their own negligence. As I held at trial, the indemnification agreement contains language limiting liability to claims arising out of or resulting from the performance of the subcontracted work to the extent caused in whole or part by the subcontractor or anyone directly or indirectly employed by the subcontractor. Thus, under the express language of the written indemnification agreement, Silva was only required to indemnify Mountain and Affordable for his own and his employees' negligence.

The cases cited by Affordable and Mountain do not hold otherwise. In both

*Lazzaro* and *Kennelty v. Darlind Construction*, 260 A.D.2d 443, 688 N.Y.S.2d 584 (3d Dep't 1999), the courts concluded that there was no evidence of negligence on the part of the owner in *Kennelty* or the general contractor in *Lazzaro* and therefore the sub-contractors were required to indemnify them. In Phase II of this case, there was an express finding of negligence on the part of both Affordable and Mountain. (*See* Phase II Verdict Sheet, Q. 3, 5). The finding was based on the evidence presented to the jury, including testimony that Sam Kaller, the agent of Affordable and Mountain, was present at the site, and had certain supervisory responsibilities. The evidence also showed that Affordable and Mountain provided certain equipment to the sub-contractors. The fact that the final determination of negligence was made in Phase II of the trial rather than Phase I is irrelevant.

Based on the evidence in both phases of the trial, a jury could reasonably conclude that Affordable and Mountain failed to exercise due care in their supervision and control of the site, and that had they exercised proper care (for example, by ensuring toe holds were on the roof), plaintiff's accident would not have occurred. The jury answered the questions regarding negligence when they were asked to do so. Thus, I will not set aside the jury's apportionment of liability.

### 3. Preclusion of Proof Regarding Lack of Insurance was Proper

■ The issue of whether there was a breach of the insurance clause is irrelevant, because no cause of action for such a breach was alleged. The parties' Joint Pre–Trial order identified four issues to be

tried: 1) the cause of plaintiff's accident; 2) the extent of plaintiff's injuries; 3) whether C & L was required, by virtue of its contractual obligation, to indemnify and hold harmless Affordable and Mountain; and 4) whether third-party plaintiffs were legally entitled to maintain a third-party action in the nature of a declaratory judgment action. There was no cause of action seeking damages as a result of C & L's breach of its duty to name Affordable and Mountain as additional insureds, and no such issue was identified as triable in the pretrial order.

### 4. Third–Party Plaintiffs had no direct claim against Preferred

■ The fourth issue identified in the pretrial order was whether third-party plaintiffs were legally entitled to maintain an action for declaratory judgment.[2] The issue was framed poorly in the pre-trial order. However, in so far as Affordable and Mountain sought to obtain a declaration that C & L Construction was liable to them for the judgment entered against them, they do not need a "declaration." They have the jury's verdict, which states that C & L agreed to indemnify them and is responsible for 82% of the judgment.

In so far as Affordable and Mountain sought to obtain a declaratory judgment against Preferred, the parties stipulated that neither Affordable nor Mountain was an additional insured under C & L Construction's insurance policy with Preferred. For that reason, Affordable and Mountain cannot maintain a direct action against Preferred. Affordable and Mountain are only incidental beneficiaries to the policy. They have no rights under the policy, and thus cannot maintain an action against

**2.** The pre-trial order goes on to say "or should the declaratory judgment action be severed?" The Court declined the motion to sever, but did try the case in two phases. The issue of whether Affordable and Mountain can maintain a direct action against Preferred presents only a question of law.

Preferred under the policy. *National Westminster Bank plc v. Grant Prideco, Inc.*, 261 F.Supp.2d 265, 272 (S.D.N.Y. 2003). C & L is required to indemnify Affordable and Mountain. If Preferred disputes coverage, C & L may file an action against its insurer. And should Affordable and Mountain incur damages because of C & L's failure to name them as additional insureds, they can bring an action against C & L for breach of contract—the claim they did not bring in this action.

### Third–Party Defendant's Motion for A New Trial Pursuant to FRCP 50(b)

■ Cleidson Silva argues that the jury's determination that Paulo Miranda assented to the terms of the indemnification agreement (DX4) is against the weight of the evidence. Although the jury concluded that Miranda did not sign DX4 (*see* Phase II Verdict Sheet, Q. 1), there was sufficient evidence from which a jury could conclude that he did in fact assent to its terms on behalf of Silva—in fact, as Silva's partner.

Silva argues there was no evidence that Miranda understood the nature and terms of the written portion of the agreement, and therefore there was no meeting of the minds and he could not have assented to its terms by conduct or otherwise. Silva asserts that in his testimony Miranda failed to mention the indemnification provision and "merely testified that this 'contract' required him to prove that he had insurance, and also required something relating to 'additional insurance.'" (Silva Mem., 8.)

Silva's memorandum refers to testimony, but fails to directly quote it, or offer citations to the record (presumably because counsel has failed to obtain the transcript). A review of the draft transcript reveals that Miranda testified that the contract was in two parts—"The first part you have to give the company you're going to work for, that is Jacob in this case, the insurance certificates, showing that you have insurance for yourself and your employees, and the second part is an additional insurance which you have to give as well *which shows you and your company are responsible for your employees.*" Tr. 89:19–24. Based on this testimony, it is clear that Miranda understood C & L construction was responsible for the actions of its own employees. This is what the indemnification agreement provides. Whether or not Miranda is familiar with the legal terminology concerning indemnification is irrelevant.

There was also evidence presented at trial from which a reasonable jury could determine that Miranda understood the terms of the agreement, and assented to it on behalf of C & L Construction. Both Sofer and Miranda testified that Affordable and Mountain required indemnification and proof of insurance before C & L could begin work on the site. Miranda, Tr. 146:9–25; Sofer, Tr. 160:14–161:10, 163:18–164:4. By beginning work on the site and obtaining and delivering a Certificate of Insurance—as required in DX4—Miranda consented to the terms of the agreement, regardless of whether he signed DX4 or not. *See Podhaskie v. Seventh Chelsea Associates*, 770 N.Y.S.2d 332, 3 A.D.3d 361 (1st Dep't 1994)(indemnity contracts must be viewed with reference to the surrounding facts, and intent to indemnify was issue of fact in light of bid proposal, certificate of insurance written contract entered into after accident demonstrated subcontractor's intent to indemnify); *Pena v. Chateau Woodmere Corp., et al.*, 759 N.Y.S.2d 451, 304 A.D.2d 442 (1st Dep't 2003)(delivery of certificate of insurance evidence of intent to enter into standard Architectural Institute of America contract for indemnification); *Liberty Management & Con-*

*struction, Ltd. v. Fifth Avenue & Sixty-Sixth Street Corp.*, 620 N.Y.S.2d 827, 208 A.D.2d 73 (1st Dep't 1995)(statute requiring agreement to arbitrate be "in writing" did not require the writing to be signed). Thus, not only did Miranda understand what DX4 required, he assented (on behalf of himself and Silva) to the terms of the agreement through his conduct. *Express Industries and Terminal Corp. v. New York State Department of Transportation*, 93 N.Y.2d 584, 715 N.E.2d 1050, 693 N.Y.S.2d 857 (1999)(to create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms).

Because the jury determined that Miranda was Silva's partner, his actions and consent to be bound by the terms of DX4 also bound Silva and C & L Construction. The jury's determination that Miranda was Silva's partner was amply supported by the evidence (indeed, Silva does not move to overturn the verdict on that ground). Silva himself acknowledged that he and Miranda had been partners on another job; Silva sent his employees to work at the site; and Silva obtained the insurance for the job.

■ Finally, Silva argues that because the jury concluded that Miranda did not sign the document, it must be a forgery and therefore is void *ab initio*. *See Opals on Ice Lingerie v. Bodylines, Inc.*, No. 99 Civ. 3761, 2002 WL 718850 (E.D.N.Y. Mar. 5, 2002)(Mem., 9–10). But this is not the case. The jury was not asked to determine whether or not the document was a forgery, but rather whether Miranda signed it. The jury concluded he did not, but that does not mean the document was forged. Although Silva testified that he did not sign the document, Miranda testified Silva might have signed it. The jury could reasonably have chosen to discredit

Silva's testimony on the point—particularly in light of the fact that C & L actually provided a Certificate of Insurance and began work on the site, and also because Silva covered Madeira for his injuries under Silva's workers' compensation policy.

This constitutes the decision and order of the Court.