■ GORGONIO BALBUENA et al., Respondents, v IDR REALTY LLC et al., Defendants and Third-Party Plaintiffs. TAMAN MANAGEMENT CORP., Third-Party Defendant-Appellant. [787 NYS2d 35]—

Order, Supreme Court, New York County (Rosalyn Richter, J.), entered May 16, 2003, which, insofar as appealed from,

denied the motion by third-party defendant Taman Management Corp. for partial summary judgment dismissing plaintiff Gorgonio Balbuena's claim for lost earnings, modified, on the law, to grant such motion to the extent of dismissing such claim to the extent it seeks damages based on the wages that plaintiff Balbuena might have earned illegally in the United States, and otherwise affirmed, without costs.

As more fully discussed in the decision in *Sanango v 200 E. 16th St. Hous. Corp.* (13 AD3d 349 [2004]) in light of the federal Immigration Reform and Control Act of 1986 (IRCA) (8 USC § 1324a *et seq.*, as added by Pub L 99-603, 100 US Stat 3359, as amended) and the recent decision of the United States Supreme Court in *Hoffman Plastic Compounds, Inc. v National Labor Relations Bd.* (535 US 137 [2002]), it is our view that plaintiff, as an admitted undocumented alien, is not entitled to recover lost earnings damages based on the wages he might have earned illegally in the United States. Rather than simply dismiss the lost earnings claim, however, we limit plaintiff's recovery for lost earnings to the wages he would have been able to earn in his home country, since an award based on a prevailing foreign wage would not offend any federal policy. Concur—Nardelli, J.P., Tom, Lerner and Friedman, JJ.

Ellerin, J., dissents in a memorandum as follows: I would affirm the court's denial of third-party defendant Taman Management Corp.'s motion for partial summary judgment dismissing plaintiff's claim for lost wages.

The issue before us is whether the Immigration Reform and Control Act of 1986 (IRCA) (8 USC § 1324a) precludes plaintiff, an undocumented alien, from recovering lost wages that he would not have been able to earn absent a violation of the IRCA.

The IRCA expressly "preempt[s] any State or local law imposing civil or criminal sanctions . . . upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens" (8 USC § 1324a [h] [2]). Therefore, the underlying question in this case is whether the purpose of the IRCA, which is to *sanction those who employ* or facilitate employment of undocumented aliens, is furthered by sharply limiting the damages for which those very employers would otherwise be responsible upon their violation of this state's labor laws and thereby permitting them to reap a benefit as a result of their violation of the IRCA. It is clear that the punishment of the undocumented worker, to the advantage of the employer who has violated the IRCA, contravenes the statute's purpose and intent.

The seminal issue is whether the federal statute preempts

this state's Labor Law remedies. "[T]here is a presumption that Congress does not intend to supplant State law, and a claim traditionally within the domain of State law will not be superseded by Federal law unless that was the clear and manifest purpose of Congress" (*Nealy v US Healthcare HMO*, 93 NY2d 209, 217 [1999] [citation and internal quotation marks omitted]; *see also Zuri-Invest AG. v NatWest Fin. Inc.*, 177 F Supp 2d 189, 191-192 [SD NY 2001] ["there is a presumption against preemption"]). The mere fact that a common-law rule would affect an alien does not mean that it is preempted by federal immigration law (*see Minino v Perales*, 168 AD2d 289 [1990], *affd* 79 NY2d 883 [1992]).

There is no indication that, by passing the IRCA, Congress intended to occupy the entire field of matters affecting undocumented aliens in every respect (*see e.g. Jie v Liang Tai Knitwear Co.*, 89 Cal App 4th 654, 663, 107 Cal Rptr 2d 682, 690 [2001]). Significantly, it is silent on the question of Congress's intent to preempt state labor and employment remedies (*id.* [express preemption clauses are "indicative of a legislative intent that IRCA is not to be read as preempting anything but the laws specifically mentioned"]). That Congress did not intend to preempt state common law on the availability of damages for lost wages in tort actions is evident from the House Report on the bill, which explained that " '[i]t is not the intention of the Committee that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair practices committed against undocumented employees . . . ' " (*Montero v Immigration & Naturalization Serv.*, 124 F3d 381, 384 [2d Cir 1997], quoting HR Rep No. 99-682 [I], 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin News, at 5649, 5662).

Nor does state law conflict with or present an obstacle to the accomplishment of the objectives of the IRCA (*see e.g. California Coastal Commn. v Granite Rock Co.*, 480 US 572, 581 [1987]). In that regard, we note that state common law on the recoverability of lost wages in tort actions does not address "the employment of illegal aliens in the United States" (*Hoffman Plastic Compounds, Inc. v National Labor Relations Bd.*, 535 US 137, 147 [2002]) but is a law of general applicability, applying to both citizens and aliens. The IRCA "itself gives no indication that Congress intended the act to preempt state laws whenever state laws operate to benefit undocumented aliens" (*Dowling v Slotnik*, 244 Conn 781, 795, 712 A2d 396, 404 [1998],

*cert denied* 525 US 1017 [1998]). Indeed, "Congress does not cavalierly pre-empt state-law causes of action" (*Medtronic, Inc. v Lohr*, 518 US 470, 485 [1996]). "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (*id.* [citation and internal quotation marks omitted]).

While awarding damages for lost earnings in tort cases would benefit injured undocumented aliens, it would not have any significant impact upon the IRCA's objective of "prohibiting" their employment (*Hoffman*, 535 US at 147). "We doubt . . . that many illegal aliens come to this country to gain the protection of our labor laws. Rather it is the hope of getting a job—at any wage—that prompts most illegal aliens to cross our borders" (*Patel v Quality Inn S.*, 846 F2d 700, 704 [11th Cir 1988], *cert denied* 489 US 1011 [1989]). To make better lives for themselves these workers are willing to brave risky border crossings and to work long hours at the lowest paid and most dangerous jobs in our economy (*see* Smith, Sugimori, Yasui, Colloquium, *Low Pay, High Risk: State Models for Advancing Immigrant Workers' Rights*, 28 NYU Rev L & Soc Change 597, 598-600 [2004]). Thus, an undocumented alien's eligibility for an award of damages for lost earnings in a future tort case is unlikely to influence an immigrant's decision to try to secure work in this country. It is more likely to encourage employers to hire workers without examining their documents, contrary to the purposes of the IRCA, and to encourage employers to reduce their compliance with safety standards, contrary to state law (Wishnie, *Emerging Issues for Undocumented Workers*, 6 U Pa J Lab & Emp L 497, 507 [2004] ["exempting employers of undocumented workers from backpay liability will encourage unscrupulous business practices and stoke the demand for such employees, thereby undermining efforts to deter illegal immigration"]).

Because Taman has not shown that the IRCA preempts New York law, this case is governed by *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.* (192 AD2d 325 [1993]) and *Collins v New York City Health & Hosps. Corp.* (201 AD2d 447 [1994]). Under these state cases, it is for the jury to decide whether plaintiff's potential earnings would be the product of illegal activity. The prospects that plaintiff would have ultimately become eligible to work in the United States, or that he would have worked in a country other than the United States are not matters of speculation, but are factual issues to be litigated at trial. While plaintiff must establish future earnings

with reasonable certainty at trial (*see e.g. Razzaque v Krakow Taxi*, 238 AD2d 161, 162 [1997]), there is no basis on this record for summary judgment on these issues.