*83 OPINION OF THE COURT
Memorandum.
Order, insofar as appealed from, unanimously modified by striking the provision of the order barring inquiry into plaintiff Geovanny Oro’s immigration status in the United States. The discovery with regard thereto shall be completed within 60 days of the date of the order hereon and proceed at a time and place to be fixed in a written notice of not less than 10 days, to be given by third-party defendant Kirsch, or at such other time and place as the parties may agree. The notice shall be served within five days after service upon plaintiffs of a copy of the order hereon. Order, as so modified, affirmed without costs.
In this personal injury action, the court below properly denied third-party defendant’s motion to dismiss, inter alia, for failure to comply with discovery demands, as third-party defendant failed to show that plaintiffs’ noncompliance was willful and contumacious, especially given that much of the alleged noncompliance concerned matters that are only discoverable in narrow circumstances (see e.g. Kay v Kay, 223 AD2d 684 [1996] [tax returns discoverable in circumstances before court, in which party failed to provide any income documentation]). Tax returns, sought herein, are not generally discoverable in civil litigation (id.), and the court properly adhered to this rule in the present action, as plaintiffs provided employment records and IRS authorizations, as well as copies of plaintiff Geovanny Oro’s pay stubs, and third-party defendant failed to make the required showing that the information sought was unavailable from these or other sources (see Nanbar Realty Corp. v Pater Realty Co., 242 AD2d 208 [1997]; Consentirlo v Schwartz, 155 AD2d 640 [1989]).
However, information regarding plaintiff Geovanny Oro’s immigration status in the United States is material to his lost earnings claim, and thus the defense was entitled to reasonable inquiry into this area (see Vasquez v Sokolowski, 277 AD2d 370 [2000]; Gomez v Long Is. R.R., 201 AD2d 455 [1994]). It should be noted that specific rulings on disputed areas of questioning were not sought below and no issue is raised with regard thereto upon this appeal. This court will therefore limit its ruling concerning the protective order to striking the provision thereof barring inquiry into Geovanny Oro’s immigration status.
Although the court below did not directly address the issue in the branch of its decision and order denying third-party defendant’s motion to dismiss the lost earnings claim, third- *84 party defendant raised in the motion, and the parties contested below and upon this appeal, the issue of whether the lost wages claim should be dismissed as barred by the decision of the United States Supreme Court in Hoffman Plastic Compounds, Inc. v NLRB (535 US 137 [2002]). In Hoffman, the Supreme Court ruled that undocumented workers were not entitled to so-called “back pay” awards, covering periods that they were not working due to wrongful termination for union activities, under the National Labor Relations Act (29 USC § 158 et seq.). The stated rationale was that the National Labor Relations Act requires mitigation of damages (i.e., wrongfully terminated workers must seek employment), which for undocumented workers meant imposing a duty that could only be fulfilled by breaking United States immigration law (Hoffman, 535 US at 150-151). This holding has reopened the previously well-settled issue of entitlement to lost wages awards in state statute-based or common-law tort actions even though the plaintiff was not legally entitled to work in the United States (see e.g. Public Adm’r of Bronx County v Equitable Life Assur. Socy. of U.S., 192 AD2d 325 [1993]), an issue that, under New York law, had been a factor for the jury to consider in rendering any lost wages award, not a bar to such an award (id.; see also Balbuena v IDR Realty LLC, 13 AD3d 285 [1st Dept 2004] [Ellerin, J., dissenting], lv granted 1st Dept, May 24, 2005; Avendano v Sazerac, Inc., 221 AD2d 395 [1995]; Collins v New York City Health & Hosps. Corp., 201 AD2d 447 [1994]).
Although the Appellate Division, First Department, recently ruled that undocumented workers could recover lost wages only to the extent of earnings they could have made in their home country (see Sanango v 200 E. 16th St. Hous. Corp., 15 AD3d 36 [2004]; Balbuena v IDR Realty LLC, 13 AD3d 285 [2004], supra), the Second Department has since held that Hoffman “simply does not apply to awards of damages in personal injury actions” (Majlinger v Cassino Contr. Corp., 25 AD3d 14, 31 [2d Dept 2005]).
In Majlinger, the Second Department noted its view that the First Department’s interpretation of Hoffman in Sanango was “unduly broad,” stating:
“While the [United States] Supreme Court’s statement in Hoffman that ‘awarding backpay to illegal aliens runs counter to policies underlying IRCA [Immigration Reform and Control Act],’ if read expansively and out of context, would require the denial of lost *85 wages to undocumented aliens, it would also compel the conclusion that any sort of employment-related payment to an undocumented alien violates federal immigration policy Such a rule would prevent an undocumented alien injured in the workplace from recovering, inter alia, workers’ compensation benefits and damages for pain and suffering, and might ultimately require overruling decisions confirming the right of an undocumented alien to commence an action in a New York court in the first instance. As a result, employers of undocumented aliens would be free to ignore New York law governing workplace safety, labor relations, and the furnishing of workers’ compensation coverage, to retaliate against workers who asserted any of their rights by reporting them to federal immigration authorities, to intimidate them by threatening to do so and, indeed, to withhold wages from employees altogether, with impunity” (Majlinger, 25 AD3d 14, 23-24 [citations omitted]).
The court found no evidence that IRCA, as construed by Hoffman, operated to preempt state law governing the right of undocumented aliens to recover damages of any sort in state court, noting that Congress had neither expressly preempted state law in enacting IRCA, nor “entirely occupied the fields of workplace safety and common-law torts”; “[t]here is no indication in the IRCA . . . that Congress intended to deprive undocumented aliens of their right to sue for personal injuries in state courts or to deprive them of the incidents thereof, such as the right to recover damages for lost wages” (Majlinger, 25 AD3d 14, 21).
Nor, the court found, did common-law tort recovery present an obstacle to the congressional objectives underlying IRCA. The public policies involved in federal immigration law and the state law of tort recovery do not trench upon each other; even though a federal back pay award through the National Labor Relations Board might appear to trivialize the federal immigration laws and condone their violations,
“[a]n award of lost wages . . . compensates the employee for a loss of income proximately caused by the defendant’s injury-producing negligence . . . [S]uch damages are no more a reward for illegal conduct than are the wages the plaintiff has earned in this country, and no party in this case argues, *86 and no court has held, that an undocumented alien may be deprived of wages for work already performed” (id. at 26).
The holding in Majlinger does much to address the disturbing evidence that at least some employers have attempted to use Hoffman as an excuse to avoid paying to undocumented aliens wages for work actually performed (a construction of Hoffman that both this court and the Appellate Term for the 9th and 10th Judicial Districts have rejected [see Garcia v Pasquareto, 11 Misc 3d 1 (App Term, 9th & 10th Jud Dists 2005); Gomez v Falco, 6 Misc 3d 5 (App Term, 2d & 11th Jud Dists 2004)]), clarifying that “[IRCA] is not designed to prevent compensation of undocumented aliens (either for work already performed or for work ‘to be performed’) but to prevent the employment of undocumented aliens in the first instance” (Majlinger, 25 AD3d 14, 30).
The Majlinger court also noted that as between the worker and the government, the act of submitting fraudulent documents to secure employment is unlawful, and between the employer and the government, employing a worker who does not present proper work authorization is illegal. However, between the worker and the employer “there is a contract of employment, under which the worker is entitled to be paid for his or her work. Moreover, as between the worker and an alleged tortfeasor, there are duties under the common law and the New York statutes governing workplace safety,” and none of these relationships and duties are contingent upon a worker’s compliance with federal immigration laws (id. at 24-25). It found no analogy to case law barring recovery of damages for a lost stream of income gained from illegal activities (cf. Sanango, 15 AD3d at 43), noting that “[a]n undocumented alien performing construction work is not an outlaw engaged in illegal activity, such as bookmaking or burglary” (Majlinger, 25 AD3d 14, 29).
For all of these reasons, the Second Department in Majlinger adhered to its prior decisions holding that a plaintiff who may be an undocumented immigrant is entitled to recover lost wages, and that plaintiffs immigration status is relevant to a determination of such claims, presenting an issue of fact to be resolved by the trier of fact:
“[T]he jury may take the plaintiffs status into account, along with the myriad other factors relevant to a calculation of lost earnings, in determining, as *87 a practical matter, whether the plaintiff would have continued working in the United States throughout the relevant period, or whether his or her status would have resulted in, e.g., deportation or voluntary departure from the United States” (id. at 30; see also Vasquez v Sokolowski, 277 AD2d 370 [2000]; Gomez v Long Is. R.R., 201 AD2d 455 [1994]).
Therefore, plaintiff in the present matter may likewise seek to establish his claim for lost earnings at trial, and evidence of his own immigration status will be relevant to that inquiry.
Patterson, J.P, Rios and Helen, JJ., concur.