[845 NE2d 1246, 812 NYS2d 416]

GORGONIO BALBUENA et al., Appellants, v IDR REALTY LLC et al., Respondents and Third-Party Plaintiffs. TAMAN MANAGEMENT CORP., Third-Party Defendant-Respondent. ELIOT SPITZER, as Attorney General of the State of New York, Intervenor-Appellant.

STANISLAW MAJLINGER, Respondent, v CASSINO CONTRACTING CORP. et al., Appellants, et al., Defendants. (And a Third-Party Action.) ELIOT SPITZER, as Attorney General of the State of New York, Intervenor-Respondent.

Argued and submitted January 11, 2006; decided February 21, 2006

## POINTS OF COUNSEL

*Trolman, Glaser & Lichtman, P.C.,* New York City (*Michael T. Altman* and *Jeffrey A. Lichtman* of counsel), for appellants in the first above-entitled action. I. The Appellate Division erred in holding that state tort law has been preempted by the Immigration Reform and Control Act. (*Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Nealy v US Healthcare HMO,* 93 NY2d 209; *Silkwood v Kerr-McGee Corp.,* 464 US 238; *Florida Lime & Avocado Growers, Inc. v Paul,* 373 US 132; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.,* 514 US 645; *Ray v Atlantic Richfield Co.,* 435 US 151; *Drattel v Toyota Motor Corp.,* 92 NY2d 35; *Rivera v NIBCO, Inc.,* 364 F3d 1057; *Zeng Liu v Donna Karan Intl., Inc.,* 207 F Supp 2d 191.) II. The Appellate Division erred in holding that the United States Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]) compels a finding that plaintiffs-appellants herein cannot be compensated for unearned lost wages. (*Cruz v American Export Lines,* 67 NY2d 1; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Montero v Immigration & Naturalization Serv.,* 124 F3d 381; *Rivera v NIBCO, Inc.,* 364 F3d 1057.) III. The Appellate Division erred in determining that the primary plaintiff-appellant's wages were "illegally" earned. (*Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137.)

*Eliot Spitzer, Attorney General,* New York City (*Caitlin J. Halligan, Patricia Smith, Seth Kupferberg* and *Richard Dearing* of counsel), for intervenor-appellant in the first above-entitled action. I. The Immigration Reform and Control Act does not preempt New York Labor Law §§ 240 and 241. (*DeJesus v DeJesus,* 90 NY2d 643; *Lorillard Tobacco Co. v Reilly,* 533 US 525; *Cipollone v Liggett Group, Inc.,* 505 US 504; *Freightliner Corp. v Myrick,* 514 US 280; *Matter of Morgan Guar. Trust Co. of N.Y. v Tax Appeals Trib. of N.Y. State Dept. of Taxation & Fin.,* 80 NY2d 44; *Sasso v Vachris,* 66 NY2d 28; *Medtronic, Inc. v Lohr,* 518 US 470; *Jones v Rath Packing Co.,* 430 US 519; *English v General Elec. Co.,* 496 US 72; *Hines v Davidowitz,* 312 US 52.) II. Precluding lost earnings damages for undocumented workers would undermine the State of New York's critical interest in promoting safety for all workers. (*Haimes v New York Tel. Co.,* 46 NY2d 132; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Commercial Cleaning Servs., L.L.C. v Colin*

*Serv. Sys., Inc.,* 271 F3d 374; *De Canas v Bica,* 424 US 351; *Mendoza v Zirkle Fruit Co.,* 301 F3d 1163; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325; *Mazur v Rock-McGraw, Inc.,* 246 AD2d 515; *Collins v New York City Health & Hosps. Corp.,* 201 AD2d 447; *Matter of Testa v Sorrento Rest.,* 10 AD2d 133.)

*Malapero & Prisco, LLP,* New York City (*Francesca E. Connolly* of counsel), for respondents in the first above-entitled action. I. Plaintiffs' unearned lost wage claim should be dismissed as violating federal immigration policy as set forth in the Immigration Reform and Control Act and interpreted by the United States Supreme Court in *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]). (*INS v National Center for Immigrants' Rights, Inc.,* 502 US 183; *Bantum v American Stock Exch., LLC,* 7 AD3d 551; *Guice v Charles Schwab & Co.,* 89 NY2d 31, 520 US 1118; *Nyquist v Mauclet,* 432 US 1; *Mathews v Diaz,* 426 US 67; *Fiallo v Bell,* 430 US 787.) II. Under *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]) and the case law that follows, an undocumented alien has no right to recover future unearned lost wages in a state tort action. (*Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Veliz v Rental Serv. Corp.,* 313 F Supp 2d 1317.) III. *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]) should not be limited to the situation where a worker has provided false documentation to obtain employment. IV. Defendants' equal protection rights will be violated if plaintiffs' claim for future unearned lost wages is permitted. (*Bell v Shopwell, Inc.,* 119 AD2d 715; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36.)

*Smith & Laquercia, LLP,* New York City (*Reed M. Podell* and *Edwin L. Smith* of counsel), for third-party defendant-respondent in the first above-entitled action. I. The First Department's decision should be affirmed based upon the doctrine of preemption. (*Sure-Tan, Inc. v NLRB,* 467 US 883; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Grebow v City of New York,* 173 Misc 2d 473; *Feldman v Citibank,* 110 Misc 2d 838; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 289 F Supp 2d 429; *Schwenk v Kavanaugh,* 4 F Supp 2d 116; *Heilbut v Heilbut,* 297 AD2d 233, 99 NY2d 643; *Vasquez v Sokolowski,* 277 AD2d 370; *Guice v Charles Schwab & Co.,* 89 NY2d 31; *Barnett Bank of Marion Cty., N. A. v Nelson,* 517 US 25.) II. The First Department correctly found that *Hoffman*

*Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]) and the Immigration Reform and Control Act apply to non-National Labor Relations Act claims. (*Flores v Amigon,* 233 F Supp 2d 462; *Zeng Liu v Donna Karan Intl., Inc.,* 207 F Supp 2d 191; *Singh v Jutla & C.D. & R's Oil, Inc.,* 214 F Supp 2d 1056; *Ulloa v Al's All Tree Serv.,* 2 Misc 3d 262; *Matter of Testa v Sorrento Rest.,* 10 AD2d 133, 8 NY2d 705; *Egbuna v Time-Life Libs., Inc.,* 153 F3d 184, 525 US 1142; *Chaudhry v Mobil Oil Corp.,* 186 F3d 502; *Reyes-Gaona v North Carolina Growers Assn.,* 250 F3d 861; *Matter of Gibei [Commissioner of Labor],* 284 AD2d 784.) III. The Second Department incorrectly determined that undocumented aliens can recover unearned lost wage damages in a tort action. (*Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325; *Collins v New York City Health & Hosps. Corp.,* 201 AD2d 447; *Barker v Kallash,* 63 NY2d 19; *Johnson v Manhattan & Bronx Surface Tr. Operating Auth.,* 71 NY2d 198; *Asgar-Ali v Hilton Hotels Corp.,* 4 Misc 3d 1026[A]; *Celi v 42nd St. Dev. Project, Inc.,* 5 Misc 3d 1023[A]; *Llerena v 302 W. 12th St. Condominium,* 5 Misc 3d 1022[A]; *Madeira v Affordable Hous. Found., Inc.,* 315 F Supp 2d 504; *Majlinger v Cassino Contr. Corp.,* 1 Misc 3d 659; *Plyler v Doe,* 457 US 202.) IV. The court below should be affirmed, to the extent that it dismissed plaintiff's lost wage claim. (*Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325; *Schoenmetz v Ingham,* 949 F Supp 152; *Rizzi v Murff,* 171 F Supp 362; *Collins v New York City Health & Hosps. Corp.,* 201 AD2d 447; *Casson v Casson,* 107 AD2d 342; *People v Davis,* 161 AD2d 787; *Murray v Interurban St. Ry. Co.,* 118 App Div 35; *Razzaque v Krakow Taxi,* 238 AD2d 161; *Dennis v Dachs,* 85 AD2d 223.) V. Appellants' and Attorney General of the State of New York's arguments are flawed. (*Poturniak v Rupcic,* 232 AD2d 541; *Razzaque v Krakow Taxi,* 238 AD2d 161; *Dennis v Dachs,* 85 AD2d 223; *Casson v Casson,* 107 AD2d 342; *People v Davis,* 161 AD2d 787; *Escobar v Spartan Sec. Serv.,* 281 F Supp 2d 895; *Leeds v Metropolitan Gas-Light Co.,* 90 NY 26; *McConnell v Commonwealth Pictures Corp.,* 7 NY2d 465; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36.) VI. Allowing an undocumented alien to recover unearned lost wage tort damages violates defendants' equal protection and due process rights. (*Free v Bland,* 369 US 663; *Gibbons v Ogden,* 9 Wheat [22 US] 1; *Bell v Shopwell, Inc.,* 119 AD2d 715; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Truax v Corrigan,* 257 US 312; *Razzaque v Krakow Taxi,* 238 AD2d

161; *Dennis v Dachs,* 85 AD2d 223; *Poturniak v Rupcic,* 232 AD2d 541.) VII. The Attorney General of the State of New York's enforcement practices are incompatible with congressional immigration policy and federal law. (*Egbuna v Time-Life Libs., Inc.,* 153 F3d 184; *Rivera v NIBCO, Inc.,* 364 F3d 822; *United States v Kim,* 193 F3d 567.)

*Fiedelman & McGaw,* Jericho (*Andrew Zajac, Douglas J. Hayden, Dawn C. DeSimone, Rona L. Platt, Paul L. Isaacson* and *Ross P. Masler* of counsel), for Defense Association of New York, Inc. and another, amici curiae in the first above-entitled action. I. The Supremacy Clause of the United States Constitution compels that this Court follow the intent of the Immigration Reform and Control Act and bar lost earnings claims of illegal aliens in civil tort actions. (*Toll v Moreno,* 458 US 1; *Rice v Santa Fe Elevator Corp.,* 331 US 218; *Ray v Atlantic Richfield Co.,* 435 US 151; *Nyquist v Mauclet,* 432 US 1; *De Canas v Bica,* 424 US 351; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Cipollone v Liggett Group, Inc.,* 505 US 504; *Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.,* 489 US 468; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36.) II. Public policy should prohibit an award of lost earnings to illegal aliens. (*Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.],* 76 NY2d 248; *Matter of Marhoffer v Marhoffer,* 220 NY 543; *Matter of Wilkosz v Symington Gould Corp.,* 14 AD2d 408, 14 NY2d 739; *Matter of Testa v Sorrento Rest.,* 10 AD2d 133, 8 NY2d 705; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Matter of Atkinson v City of New York,* 96 NY2d 809; *Boles v Dormer Giant, Inc.,* 4 NY3d 235; *Matter of Cruz v New Millennium Constr. & Restoration Corp.,* 17 AD3d 19; *Continental Ins. Co. v State of New York,* 99 NY2d 196.)

*Shaub, Ahmuty, Citrin & Spratt, LLP,* Lake Success (*Steven J. Ahmuty, Jr., Timothy R. Capowski* and *Christopher Simone* of counsel), *Daniel J. Popeo,* Washington, D.C., *Richard Samp* and *Sherman Joyce* for Washington Legal Foundation and another, amici curiae in the first above-entitled action. I. Plaintiffs' arguments supporting recovery of unearned wages by illegal aliens are founded on faulty and illusory premises absent here and from most or all personal injury cases to which this rule would apply. (*People v Hobson,* 39 NY2d 479; *North Star Reins. Corp. v Continental Ins. Co.,* 82 NY2d 281; *Kwoksze Wong v New York Times Co.,* 297 AD2d 544; *Inchaustegui v 666 5th Ave. Ltd. Partnership,* 96 NY2d 111; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137.) II. Plaintiffs' proposed rule permitting any

recovery of unearned wages by illegal aliens is entirely unworkable within the parameters of New York State tort law. Such a rule inherently undermines settled rules of evidence while creating equal protection violations, unavoidably compromises the integrity of the court system, and violates public policy. (*Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.*, 192 AD2d 325; *Collins v New York City Health & Hosps. Corp.*, 201 AD2d 447; *People v Hobson*, 39 NY2d 479; *McLaurin v Ryder Truck Rental*, 123 AD2d 671; *Schultz v Harrison Radiator Div. Gen. Motors Corp.*, 90 NY2d 311; *Swedowski v Ethicon, Inc.*, 6 AD3d 1198; *Stone v Freeman*, 298 NY 268; *Schermerhorn v Talman*, 14 NY 93; *Carr v Hoy*, 2 NY2d 185; *Reiner v North Am. Newspaper Alliance*, 259 NY 250.)

*Amy Sugimori*, New York City, and *Catherine Ruckelshaus* for National Employment Law Project and another, amici curiae in the first above-entitled action. Immigration status has no impact on the remedies available to a worker who is injured on the job. (*Hoffman Plastic Compounds, Inc. v NLRB*, 535 US 137; *Veliz v Rental Serv. Corp. USA, Inc.*, 313 F Supp 2d 1317.)

*Meyer, Suozzi, English & Klein, P.C.*, New York City (*Anne Marie O'Donovan* of counsel), for James Atleson and others, amici curiae in the first above-entitled action. I. The history of Labor Law §§ 240 and 241 demonstrates their critical role in New York's scheme to protect the safety of all construction workers, regardless of immigration status. (*Caddy v Interborough R.T. Co.*, 195 NY 415; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Haimes v New York Tel. Co.*, 46 NY2d 132; *Allen v Cloutier Constr. Corp.*, 44 NY2d 290; *Stewart v Ferguson*, 164 NY 553; *Koenig v Patrick Constr. Corp.*, 298 NY 313; *Major v Waverly & Ogden*, 7 NY2d 332; *Maloney v Cunard S.S. Co., Ltd.*, 217 NY 278; *Lowenhar v Commercial Outfitting Co.*, 260 App Div 211.) II. In light of New York's large immigrant population in the late 19th century and the Legislature's deep familiarity with immigration status distinctions, the failure to exclude immigrants from the predecessors to Labor Law §§ 240 and 241 is best understood as purposeful. (*Fong Yue Ting v United States*, 149 US 698; *Henderson v Mayor of New York*, 92 US 259; *People of the State of New York v Compagnie Generale Transatlantique*, 107 US 59.) III. Other New York workplace safety laws of the era reveal a powerful legislative commitment to coverage without regard to immigration status. (*Caddy v Interborough R.T. Co.*, 195 NY 415; *Montgomery v Daniels*, 38

NY2d 41; *Spaduccino v John G. Hayes & Co.,* 180 App Div 37; *Alfson v Bush Co. [Ltd.],* 182 NY 393; *Sliosberg v New York Life Ins. Co.,* 244 NY 482.) IV. Statutory protections for injured workers have long been applied to individuals not legally authorized to work. (*Solarz v Manhattan Ry. Co.,* 8 Misc 656, 11 Misc 715, 155 NY 645; *Karpeles v Heine,* 227 NY 74; *Vincent v Riggi & Sons,* 30 NY2d 406; *Noreen v Vogel & Bros.,* 231 NY 317; *Feldman v Murray,* 285 NY 568; *Catalanotto v Palazzolo,* 46 Misc 2d 381.)

*Muzaffar Chishti,* New York City (*Michael J. Wishnie* of counsel), and *Clifford Chance LLP* (*Joel M. Cohen* and *Angelique M. Shingler* of counsel) for Associated Corset and Brassiere Manufacturers, Inc. and others, amici curiae in the first above-entitled action. I. The legal analysis of the Solicitor General of the State of New York is correct. II. Fair competition requires the uniform application of regulatory standards. (*United States v Municipal Auth.,* 150 F3d 259; *Rivera v NIBCO, Inc.,* 364 F3d 1057; *Williams v Mohawk Indus., Inc.,* 411 F3d 1252; *Mendoza v Zirkle Fruit Co.,* 301 F3d 1163.) III. Fair competition is a Congressional goal of the Immigration Reform and Control Act. (*Patel v Quality Inn S.,* 846 F2d 700; *National Labor Relations Bd. v A.P.R.A. Fuel Oil Buyers Group, Inc.,* 134 F3d 50; *Local 512, Warehouse & Off. Workers' Union v National Labor Relations Bd.,* 795 F2d 705; *Contreras v Corinthian Vigor Ins. Brokerage, Inc.,* 25 F Supp 2d 1053.)

*Miguel G. Ortiz,* Selkirk, for Albany/Capital District Chapter of the Labor Council for Latin American Advancement, amicus curiae in the first above-entitled action. *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]) does not require that an undocumented worker injured in violation of the Labor Law be denied all lost earnings or wages he may have earned in the United States but for his injury merely because of his immigration status. (*Cipollone v Liggett Group, Inc.,* 505 US 504; *De Canas v Bica,* 424 US 351; *Montero v Immigration & Naturalization Serv.,* 124 F3d 381; *Florida Lime & Avocado Growers, Inc. v Paul,* 373 US 132; *Sure-Tan, Inc. v NLRB,* 467 US 883.)

*O'Dwyer & Bernstien, LLP,* New York City (*Brian O'Dwyer* of counsel), for Emerald Isle Immigration Center, and another, amici curiae in the first above-entitled action. The penalties to owners under New York's Labor Law protect all workers performing protected activity. (*Blake v Neighborhood Hous.*

*Servs. of N.Y. City,* 1 NY3d 280; *Connors v Boorstein,* 4 NY2d 172; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290; *Koenig v Patrick Constr. Corp.,* 298 NY 313; *Wright v Belt Assoc.,* 14 NY2d 129; *Curtis v State of New York,* 23 NY2d 976; *Zimmer v Chemung County Performing Arts,* 65 NY2d 513; *Public Adm'r of Bronx County v Trump Vil. Constr. Corp.,* 177 AD2d 258; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Madeira v Affordable Hous. Found., Inc.,* 315 F Supp 2d 504.)

*Smith & Laquercia, LLP,* New York City (*Reed M. Podell* and *Edwin L. Smith* of counsel), for Cassino Contracting Corp. and another, appellants in the second above-entitled action. Federal immigration law precludes plaintiff, an undocumented alien, from recovering unearned lost wages as damages. (*Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325; *Klapa v O & Y Liberty Plaza Co.,* 168 Misc 2d 911; *Collins v New York City Health & Hosps. Corp.,* 201 AD2d 447; *Cano v Mallory Mgt.,* 195 Misc 2d 666; *Gomez v Long Is. R.R.,* 201 AD2d 455; *Vasquez v Sokolowski,* 277 AD2d 370; *Fiallo v Bell,* 430 US 787; *Mathews v Diaz,* 426 US 67; *Aliens for Better Immigration Laws v United States,* 871 F Supp 182.)

*Mischel & Horn, P.C.,* New York City (*Scott T. Horn* of counsel), and *DeCicco Gibbons & McNamara, P.C.* for Jack Thaon and others, appellants in the second above-entitled action. The Appellate Division erroneously denied defendants' applications for summary judgment dismissing plaintiff's lost wages claims. (*Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Balbuena v IDR Realty LLC,* 13 AD3d 285; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Barker v Kallash,* 63 NY2d 19.)

*Faden & Goldmacher,* Westbury (*Beth J. Goldmacher* of counsel), and *Jacobson & Schwartz,* Rockville Centre (*Henry J. Cernitz* of counsel), for D & Sons Construction Corp., appellant in the second above-entitled action. An illegal alien is not entitled to pursue a lost earnings claim in a personal injury action. (*Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137.)

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), for respondent in the second above-entitled action. The Appellate Division properly applied the law to the facts of this case, and accurately balanced the State's interest in ensuring full compensation to injured parties with the Supreme Court's interpretation of the Immigration Reform and Control

Act in *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]). (*Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Balbuena v IDR Realty LLC,* 13 AD3d 285; *Collins v New York City Health & Hosps. Corp.,* 201 AD2d 447; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325; *Matter of Aliessa v Novello,* 96 NY2d 418; *Mazur v Rock-McGraw, Inc.,* 246 AD2d 515; *Michalsky v Ford Motor Co.,* 935 F Supp 203; *Hagl v Jacob Stern & Sons, Inc.,* 396 F Supp 779; *Catalanotto v Palazzolo,* 46 Misc 2d 381; *Klapa v O & Y Liberty Plaza Co.,* 168 Misc 2d 911, 218 AD2d 635.)

*Eliot Spitzer, Attorney General,* Albany (*Daniel Smirlock* of counsel), for intervenor-respondent in the second above-entitled action. The Appellate Division correctly held that plaintiff may recover lost earnings damages in an action under New York Labor Law §§ 200, 240 and 241 and common-law negligence principles, despite his status as an undocumented alien unauthorized for employment in the United States. (*Balbuena v IDR Realty LLC,* 13 AD3d 285; *Hoffman Plastic Compounds, Inc. v NLRB,* 535 US 137; *Sanango v 200 E. 16th St. Hous. Corp.,* 15 AD3d 36; *Cipollone v Liggett Group, Inc.,* 505 US 504; *International Paper Co. v Ouellette,* 479 US 481; *English v General Elec. Co.,* 496 US 72; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290; *Flores v Lower E. Side Serv. Ctr., Inc.,* 4 NY3d 363; *Madeira v Affordable Hous. Found., Inc.,* 315 F Supp 2d 504; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.,* 192 AD2d 325.)

## OPINION OF THE COURT

GRAFFEO, J.

Plaintiffs, who are not United States citizens or lawfully admitted resident aliens, allege that they were injured while working on construction sites and have commenced personal injury litigation predicated on defendants' purported violations of the state Labor Law. The issue before us is whether plaintiffs' status as aliens who are not legally authorized to work in the United States precludes their recovery of lost earnings.

## Facts

### *Balbuena v IDR Realty LLC et al.*

Gorgonio Balbuena is a native of Mexico who entered the United States without the permission of federal immigration authorities. In April 2000, he was employed as a construction

worker by third-party defendant Taman Management Corp. on a site owned and managed by defendants IDR Realty LLC and Dora Wechler. According to Balbuena, he fell from a ramp while pushing a wheelbarrow, sustaining severe head trauma and other debilitating injuries that have rendered him incapacitated and unable to work.

Balbuena and his wife sued defendants[1] for common-law negligence and violations of Labor Law § 240 (1) and § 241 (6), seeking various categories of damages, including past wages from the time of the accident until a verdict and the future loss of earnings (collectively referred to as lost wages). During discovery, Taman sought documentation from Balbuena demonstrating that he had obtained the necessary authorization to work in the United States as required by federal law. After Balbuena objected to this request and failed to produce such documentation, Taman moved for a court order resolving the immigration and work authorization issues. Taman also sought partial summary judgment dismissing Balbuena's claim for lost wages, relying on the United States Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]), which held that an undocumented alien who provided fraudulent work papers in violation of federal law could not be awarded back pay for work not performed as a result of an employer's unfair labor practice. Taman argued that state tort law is preempted by federal law, as construed in *Hoffman* and, hence, an award of lost wages to Balbuena would undermine national immigration policies. In opposition to the motion, Balbuena admitted that he did not possess work authorization documents but argued that *Hoffman* was distinguishable from his legal claims and did not bar recovery for state Labor Law violations.

Supreme Court denied defendants' motion for partial summary judgment, concluding that state law allows an undocumented alien to recover lost wages and that *Hoffman* did not apply to tort actions brought under state law. The Appellate Division, First Department, modified by granting Taman's motion for partial summary judgment dismissing Balbuena's claim for lost earnings to the extent it sought damages based on wages

---

1. The complaint originally named Taman, IDR Realty and Wechler as defendants. After the Workers' Compensation Board determined that Taman was Balbuena's employer, the claim against it was withdrawn, and IDR Realty and Wechler initiated a third-party action against Taman based on contractual indemnity.

plaintiff might have earned in the United States. Relying on its decision in *Sanango v 200 E. 16th St. Hous. Corp.* (15 AD3d 36 [1st Dept 2004]), the Court determined that an alien who has not obtained work authorization is precluded by *Hoffman* from claiming lost wages derived from income earned in the United States, but may seek wages based on income that could be earned in the alien's home country. A dissenting Justice voiced a contrary view, finding that federal immigration law did not prohibit past and future wage claims under state law. The Appellate Division subsequently permitted the Attorney General to intervene in the case, denied reargument and granted leave to appeal to this Court.

### *Majlinger v Cassino Contr. Corp.*

Stanislaw Majlinger came to the United States in November 2000 from Poland on a travel visa, but remained in this country to work after his visa expired. In January 2001, he was employed as a construction worker by J & C Home Improvement, a subcontractor on a building project being developed by the various defendants in this case in their capacity as property owners, contractors or their agents. Like Gorgonio Balbuena, Majlinger never received authorization from federal immigration authorities to work in the United States.

Majlinger alleges that he was installing siding on the exterior of a building while standing on a scaffold approximately 15 feet off the ground when the scaffold suddenly collapsed, causing him to sustain serious physical injuries. Majlinger initiated a lawsuit, claiming defendants were liable under Labor Law §§ 200, 240 (1) and § 241 (6). Among other damages, Majlinger sought earnings lost as a result of his purported inability to work. In response to discovery requests by defendants Cassino Contracting Corp. and Veteran Properties Inc., Majlinger conceded that he had not acquired the necessary work authorization documentation. Cassino and Veteran, together with other defendants and a third-party defendant, moved for partial summary judgment dismissing Majlinger's claim for lost wages based on his status as an undocumented alien pursuant to *Hoffman*, federal immigration law and preemption principles.

Supreme Court granted partial summary judgment to defendants and dismissed Majlinger's claim for lost wages "[o]n constraint of *Hoffman*." (1 Misc 3d 659, 662 [2003].) After granting the Attorney General permission to intervene, the Appellate Division, Second Department, reversed and reinstated the dam-

ages claim for lost wages. Disagreeing with the First Department's decisions in *Balbuena* (13 AD3d 285 [2004]) and *Sanango*, the Second Department concluded that state tort law is not preempted by federal immigration law because neither federal statutes nor *Hoffman* prohibit an undocumented alien from recovering lost wages in a personal injury action. The Appellate Division granted leave to appeal to this Court.

The central issue in these appeals, stated broadly, is whether an undocumented alien injured at a work site as a result of state Labor Law violations is precluded from recovering lost wages due to immigration status. Defendants[2] here contend that an award of past and future wages to an undocumented alien worker expressly conflicts with federal immigration law and implicitly undermines the objectives that Congress sought to achieve when it adopted the nation's current immigration policies. Our analysis begins with the text and history of relevant federal immigration statutes, proceeds to the impact of the United States Supreme Court's decision in *Hoffman*, and concludes with preemption principles derived from the Supremacy Clause and the policy objectives of the New York Legislature underlying the relevant sections of state Labor Law.

## The Federal Immigration and Nationality Act

Under the United States Constitution, the power to regulate immigration rests exclusively with the federal government (*see* US Const, art I, § 8 [4]; *De Canas v Bica*, 424 US 351, 354 [1976]; *Takahashi v Fish & Game Comm'n*, 334 US 410, 419 [1948]). Pursuant to this authority, in 1952 Congress enacted the Immigration and Nationality Act (INA) (*see* Pub L 414, 66 US Stat 163, as amended, codified at 8 USC § 1101 *et seq.*) as a "comprehensive federal statutory scheme for regulation of immigration and naturalization" (*De Canas v Bica*, 424 US at 353). The purpose of the INA was to delineate "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country" (*id.* at 359). This congressional act, however, expressed only a "peripheral concern" regarding the employment of illegal aliens (*id.* at 360); the INA did not make it "unlawful for an employer to hire an alien who is present or working in the United States without appropriate

---

2. For purposes of this opinion, the term "defendants" refers collectively to all of the named defendants in both cases before us, as well as the remaining third-party litigants. The term "plaintiffs" refers to the injured, undocumented aliens.

authorization" or for "an alien to accept employment after entering this country illegally" (*Sure-Tan, Inc. v NLRB*, 467 US 883, 893 [1984]). As a result, the United States Supreme Court ruled that the exclusive authority of Congress to regulate immigration did not prevent the states from enacting labor laws that forbid the employment of illegal aliens (*see De Canas v Bica*, 424 US at 365).

Because the INA did not make it a crime to employ an illegal alien or be employed as an alien lacking work authorization, the Supreme Court subsequently held that the provisions of the National Labor Relations Act (NLRA), the purpose of which is to protect employees and provide remedies against illegal actions by employers, could be applied to employment practices that affect illegal aliens (*see Sure-Tan, Inc. v NLRB*, 467 US at 892). Rejecting the argument that application of the NLRA would conflict with the purposes of the INA, the Supreme Court concluded that enforcement of the federal labor relations statutes was "compatible" with immigration law:

> "A primary purpose in restricting immigration is to preserve jobs for American workers; immigrant aliens are therefore admitted to work in this country only if they 'will not adversely affect the wages and working conditions of the workers in the United States similarly employed.' . . . Application of the NLRA helps to assure that the wages and employment conditions of lawful residents are not adversely affected by the competition of illegal alien employees who are not subject to the standard terms of employment. If an employer realizes that there will be no advantage under the NLRA in preferring illegal aliens to legal resident workers, any incentive to hire such illegal aliens is correspondingly lessened. In turn, if the demand for undocumented aliens declines, there may then be fewer incentives for aliens themselves to enter in violation of the federal immigration laws. The Board's enforcement of the NLRA as to undocumented aliens is therefore clearly reconcilable with and serves the purposes of the immigration laws" (*id.* at 893-894).[3]

---

**3.** With regard to the remedies available to the National Labor Relations Board (NLRB), the Supreme Court determined that the Board could not award back pay or reinstate the workers at issue, who had left the United States and

## The Federal Immigration Reform and Control Act of 1986

Despite the policy objectives of the INA, the United States faced steadily increasing waves of aliens entering the United States illegally. After many years of bipartisan efforts to update federal immigration laws,[4] in 1986 Congress adopted the Immigration Reform and Control Act (IRCA) (*see* Pub L 99-603, 100 US Stat 3359, as amended, codified at 8 USC § 1324a *et seq.*). Both Congress and the President expressed the view that "[t]he principal means of closing the back door, or curtailing future illegal immigration, [wa]s through employer sanctions" (HR Rep No. 99-682, part I, 99th Cong, 2d Sess, at 46, reprinted in 1986 US Code Cong & Admin News, at 5650) that were intended to "remove the incentive for illegal immigration by eliminating the job opportunities which draw illegal aliens" into the country (Pub L 99-603, Statement by President Ronald Reagan Upon Signing S 1200, 22 Wkly Compilation Presidential Docs 1534 [Nov. 10, 1986], reprinted in 1986 US Code Cong & Admin News, at 5856-1). To attain this goal, the most important component of the IRCA scheme was the creation of a new "[e]mployment verification system" designed to deter the employment of aliens who are not lawfully present in the United States and those who are lawfully present, but not authorized to work (*see* 8 USC § 1324a [b]).

Under this system, aliens legally present and approved to work in the United States are issued formal documentation of their eligibility status by federal immigration authorities (*see* 8 USC § 1324a [b] [1] [B], [C]), usually in the form of a "green card," a registration number or some other document issued by the Bureau of Citizenship and Immigration Services (*see INS v National Center for Immigrants' Rights, Inc.*, 502 US 183, 195-196 [1991]; 8 CFR 274a.12 [a]). Before hiring an alien, an employer is required to verify the prospective worker's identity and work eligibility by examining the government-issued documentation. If the required documentation is not presented, the alien cannot be hired (*see* 8 USC § 1324a [a] [1]). An employer who knowingly violates the employment verification

---

were not authorized to reenter the country (*see Sure-Tan, Inc. v NLRB*, 467 US at 903-904).

4. *See* HR Rep No. 99-682, part I, 99th Cong, 2d Sess, at 45, 51-56, reprinted in 1986 US Code Cong & Admin News, at 5649, 5655-5660; *see also* Pub L 99-603, Statement by President Ronald Reagan Upon Signing S 1200, 22 Wkly Compilation Presidential Docs 1534 (Nov. 10, 1986), reprinted in 1986 US Code Cong & Admin News, at 5856-1, 5856-4.

requirements, or who unknowingly hires an illegal alien but subsequently learns that an alien is not authorized to work and does not immediately terminate the employment relationship, is subject to civil or criminal prosecution and penalties (*see* 8 USC § 1324a [a] [1], [2]; [f] [1]).

In addition to the provisions relating to the responsibilities of employers, IRCA also declares that it is a crime for an alien to provide a potential employer with documents falsely acknowledging receipt of governmental approval of the alien's eligibility for employment (*see* 8 USC § 1324c [a]). Similar to the INA, however, IRCA does not penalize an alien for attaining employment without having proper work authorization, unless the alien engages in fraud, such as presenting false documentation to secure the employment. In order to preserve the national uniformity of this verification system and the sanctions imposed for violations, Congress expressly provided that IRCA would "preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens" (8 USC § 1324a [h] [2]).

### The Impact of *Hoffman*

It was against this federal statutory backdrop that the United States Supreme Court decided *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]). The issue was whether an illegal alien who, in violation of IRCA, gained employment by presenting false work authorization documents could be awarded back pay by the NLRB after the worker was impermissibly terminated for engaging in union-organizing activities. The Supreme Court concluded that such an award was prohibited because it would conflict with the purpose of IRCA. The Court observed that "[u]nder the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification . . . or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations" (*id.* at 148).

The Court emphasized that the salient factor in the case was that "Congress has expressly made it criminally punishable for an alien to obtain employment with false documents" and that the alien had, in fact, committed this crime (*id.* at 149). Thus, the Court determined that "awarding backpay in a case like

this not only trivializes the immigration laws, it also condones and encourages future violations" because the alien would qualify for an NLRB award "only by remaining inside the United States illegally" and could not "mitigate damages . . . without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers" (*id.* at 150-151).

The implications of *Hoffman* underlie the controversies in the two appeals before this Court. The main thrust of defendants' arguments is that IRCA, as construed by *Hoffman*, precludes an undocumented alien from recovering lost wages in a state personal injury action. According to defendants, such an award is a penalty upon the employer that is expressly preempted by IRCA, specifically 8 USC § 1324a (h) (2). Defendants also assert that the doctrine of "field preemption" prohibits an award of past or future earnings because the federal government has exclusive authority to regulate immigration and Congress has exercised that power by enacting the comprehensive schemes established in the INA and IRCA. Finally, defendants claim that permitting an undocumented alien to recover lost wages is in contravention of the purposes and objectives of IRCA in that it condones past transgressions of immigration laws and encourages future violations.

Joined by the Attorney General as intervenor, plaintiffs argue that an undocumented alien should be allowed to recover for earning capacity lost as a result of defendants' failure to adhere to the workplace safety requirements established in the state Labor Law. The primary rationale for their conclusion that IRCA does not preempt state law is that precluding a lost wages claim would make it more financially attractive to hire illegal aliens, thereby undercutting the central goal of the federal act, and would provide less of an incentive to comply with state labor requirements, contrary to the purposes of Labor Law §§ 200, 240 (1) and § 241 (6). Plaintiffs and the Attorney General also contend that the doctrines of express and field preemption are inapplicable because neither the text of IRCA nor its legislative history indicates that Congress intended to affect workplace protections provided by the states.

In order to evaluate the efficacy of the parties' arguments, we first must examine principles of federal preemption derived from the United States Constitution.

### The Supremacy Clause and Preemption Principles

The Supremacy Clause, in article VI of the Constitution, "may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law" (*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US 645, 654 [1995]). It is "never assumed lightly that Congress has derogated state regulation, but instead [courts] have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law" (*id.*; *see Nealy v US Healthcare HMO*, 93 NY2d 209, 217 [1999]). The presumption against preemption is especially strong with regard to laws that affect the states' historic police powers over occupational health and safety issues (*see De Canas v Bica*, 424 US at 356-357) and is overcome only if it " 'was the clear and manifest purpose of Congress' " to supplant state law (*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US at 655, quoting *Rice v Santa Fe Elevator Corp.*, 331 US 218, 230 [1947]).

Several distinct preemption doctrines have evolved under the Supremacy Clause. "Express preemption" applies where Congress explicitly declares that a federal law is intended to supersede state law (*see e.g. Sprietsma v Mercury Marine*, 537 US 51, 62-63 [2002]). "Implied preemption" takes two forms. The first, referred to as "field preemption," occurs "if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it' " (*Cipollone v Liggett Group, Inc.*, 505 US 504, 516 [1992], quoting *Fidelity Fed. Sav. & Loan Assn. v De la Cuesta*, 458 US 141, 153 [1982] [internal quotation marks omitted]). The second type, "conflict preemption," establishes that

> "a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found where compliance with both federal and state regulations is a physical impossibility . . . or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Ray v Atlantic Richfield Co.*, 435 US 151, 158 [1978] [citations and internal quotation marks omitted]; *see also Silkwood v Kerr-McGee Corp.*, 464 US 238, 256 [1984]; *Florida Lime & Avocado Growers, Inc. v Paul*, 373 US 132, 142-143 [1963]; *Guice v Charles Schwab &*

*Co.*, 89 NY2d 31, 39 [1996], *cert denied* 520 US 1118 [1997]).

## Express Preemption

██ Contrary to defendants' contention, IRCA does not contain an express statement by Congress that it intended to preempt state laws regarding the permissible scope of recovery in personal injury actions predicated on state labor laws. As relevant to these cases, Congress expressly preempted only state and local laws that impose "civil or criminal sanctions" on employers of undocumented aliens (8 USC § 1324a [h] [2]). A sanction is generally considered a "penalty or coercive measure" (Black's Law Dictionary 1368 [8th ed]), such as a punishment for a criminal act or a civil fine for a statutory or regulatory violation. The plain language of section 1324a (h) (2) appears directed at laws that impose fines for hiring undocumented aliens, such as the California statute at issue in *De Canas v Bica* (424 US 351 [1976]). The legislative history of IRCA confirms this interpretation, as the preemption language in section 1324a (h) (2) was intended to apply only to civil fines and criminal sanctions imposed by state or local law (*see* HR Rep No. 99-682, part I, 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin News, at 5662). In contrast, the primary purpose of civil recovery in a personal injury action premised on state Labor Law provisions is not to punish the tortfeasor but to compensate the worker for injuries proximately caused by negligence or the violation of statutory safety standards.

## Field Preemption

██ We are similarly unpersuaded by defendants' field preemption argument. Certainly IRCA and related statutes throughly occupy the spectrum of immigration laws. But there is nothing in those provisions indicating that Congress meant to affect state regulation of occupational health and safety, or the types of damages that may be recovered in a civil action arising from those laws. To the contrary, the legislative history of IRCA shows that the Act was not intended "to undermine or diminish in any way labor protections in existing law" (*id.*).

## Conflict Preemption

The more difficult issue is whether an award for lost wages to an undocumented immigrant injured as a result of a responsible

party's violation of the Labor Law would conflict with or otherwise erode the objectives of IRCA in a manner sufficient to surmount the strong presumption against preemption. We recognize that questions regarding the reach of *Hoffman* have generated a spirited debate and a variety of judicial and academic opinions.[5]

The Supreme Court has recognized that, notwithstanding the federal government's exclusive control over immigration and naturalization, the "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State," which includes the power to enact "laws affecting occupational health and safety" (*De Canas v Bica*, 424 US at 356)—issues that have been "primarily, and historically, a matter of local concern" (*Hillsborough County v Automated Medical Laboratories, Inc.*, 471 US 707, 719 [1985]). In the Labor Law context, we have noted that

> "the legislative history of the Labor Law, particularly sections 240 and 241, makes clear the Legislature's intent to achieve the purpose of protecting workers by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 407), instead of on workers, who 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985], quoting *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318 [1948]).

The Labor Law, therefore, applies to all workers in qualifying employment situations—regardless of immigration status—and

---

**5.** *See e.g. Rosa v Partners in Progress Inc.*, 152 NH 6, 868 A2d 994 (2005); *Correa v Waymouth Farms, Inc.*, 664 NW2d 324 (Minn 2003); *Farmer Bros. Coffee v Workers' Compensation Appeals Bd.*, 133 Cal App 4th 533, 35 Cal Rptr 3d 23 (Ct App 2005); *Crespo v Evergo Corp.*, 366 NJ Super 391, 841 A2d 471 (App Div 2004), *certification denied* 180 NJ 151, 849 A2d 184 (2004); *Tyson Foods, Inc. v Guzman*, 116 SW3d 233 (Tx Ct App 2003); *Cherokee Indus., Inc. v Alvarez*, 84 P3d 798 (Okla Ct Civ App 2003); *Madeira v Affordable Hous. Found., Inc.*, 315 F Supp 2d 504 (SD NY 2004); *Veliz v Rental Serv. Corp. USA, Inc.*, 313 F Supp 2d 1317 (MD Fla 2003); *Hernandez-Cortez v Hernandez*, 2003 WL 22519678, 2003 US Dist LEXIS 19780 (US Dist Ct, D Kan, Marten, J., 01 Civ 1241); *Developments in the Law—Jobs and Borders*, 118 Harv L Rev 2171, 2242 (2005); Wishnie, *Emerging Issues for Undocumented Workers*, 6 U Pa J Lab & Emp L 497, 512 (2004); Note, *A Call to Revisit Sure-Tan v. NLRB: Undocumented Workers and Their Right to Back Pay*, 30 Sw U L Rev 505 (2001).

nothing in the relevant statutes or our decisions negates the universal applicability of this principle (*see generally Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46, 50-51 [2004]).[6]

■ ■ Additionally, limiting a lost wages claim by an injured undocumented alien would lessen an employer's incentive to comply with the Labor Law and supply all of its workers the safe workplace that the Legislature demands (*cf. Continental PET Tech., Inc. v Palacias*, 269 Ga App 561, 562-563, 604 SE2d 627, 630 [2004] [IRCA and immigration regulations "do not purport to intrude into the area of what protections a State may afford these aliens"], *cert denied* 546 US —, 126 S Ct 362 [2005]). Given the clear statement in IRCA's legislative history that the Act was not intended "to undermine or diminish in any way labor protections in existing law" (HR Rep No. 99-682, part I, 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin News, at 5662), we are unpersuaded that IRCA requires such a diminution in the force and effect of state workplace safety mandates. To the contrary, in order to further the laudable purposes of IRCA and our Labor Law, "tort deterrence principles provide a compelling reason to allow an award of such damages against a person responsible for an illegal alien's employment when that person knew or should have known of that illegal alien's status" (*Rosa v Partners in Progress, Inc.*, 152 NH at 13, 868 A2d at 1000).

As the Second Department cogently observed, a different conclusion would not only diminish the protections afforded by the Labor Law, it would also improvidently reward employers who knowingly disregard the employment verification system in defiance of the primary purposes of federal immigration laws. An absolute bar to recovery of lost wages by an undocumented worker would lessen the unscrupulous employer's potential liability to its alien workers and make it more financially attractive to hire undocumented aliens (*see generally Patel v Quality Inn S.*, 846 F2d 700, 704 [11th Cir 1988], *cert denied* 489 US 1011 [1989]; *Dowling v Slotnik*, 244 Conn 781, 796, 712 A2d

---

6. In the related context of workers' compensation statutes, also enacted for the benefit of employees, courts have found such statutes applicable to all persons within the state's borders, even those who are not entitled to be here (*see e.g. Design Kitchen & Baths v Lagos*, 388 Md 718, 733, 882 A2d 817, 826 [2005]; *Correa v Waymouth Farms, Inc.*, 664 NW2d at 329; *Farmers Bros. Coffee v Workers' Compensation Appeals Bd.*, 133 Cal App 4th at 542, 35 Cal Rptr 3d at 29; *Safeharbor Empl. Servs. I, Inc. v Cinto Velazquez*, 860 So 2d 984, 986 [Fla Ct App, 1st Dist 2003], *review denied* 873 So 2d 1224 [Fla 2004]; *but see Tarango v State Indus. Ins. Sys.*, 117 Nev 444, 449, 25 P3d 175, 179 [2001]).

396, 404 [1998]; *Nizamuddowlah v Bengal Cabaret*, 69 AD2d 875, 876 [2d Dept 1979], *lv dismissed* 48 NY2d 609, 883 [1979]). This, coupled with the fact that illegal aliens are willing to work in jobs that are more dangerous and undesirable—and for less money—than their legal immigrant and citizen counterparts, would actually increase employment levels of undocumented aliens, not decrease it as Congress sought by its passage of IRCA (*see Sure-Tan, Inc. v NLRB*, 467 US at 893-894; *see also* HR Rep No. 99-682, part I, 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin News, at 5662).[7]

Aside from the compatibility of federal immigration law and our state Labor Law, plaintiffs here—unlike the alien in *Hoffman*—did not commit a criminal act under IRCA. Whereas the undocumented alien in *Hoffman* criminally provided his employer with fraudulent papers purporting to be proper federal work documentation, there is no allegation in these cases that plaintiffs produced false work documents in violation of IRCA or were even asked by the employers to present the work authorization documents as required by IRCA. Notably, IRCA does not make it a crime to work without documentation. *Hoffman* is dependent on its facts, including the critical point that the alien tendered false documentation that allowed him to work legally in this country (*see Hoffman*, 535 US at 149). This was a clear violation of IRCA. We see no reason to equate the criminal misconduct of the employee in *Hoffman* to the conduct of the plaintiffs here since, in the context of defendants' motions for partial summary judgment, we must presume that it was the employers who violated IRCA by failing to inquire into plaintiffs' immigration status or employment eligibility (*see* Wishnie,

---

7. Our dissenting colleagues conclude that public policy requires the dismissal of plaintiffs' claims as a matter of state law. We find their argument unpersuasive, as it fails to consider the spectrum of state concerns entwined in these cases, particularly the workplace safety standards long embodied in the Labor Law and the State's interest in ensuring that employers comply with those standards. Relatedly, the dissent does not acknowledge that Congress expressly indicated that IRCA was not intended to undermine existing statutory labor protections. The dissent's bar to an alien's recourse under the Labor Law actually rewards IRCA violations by employers and thereby promotes the employment of undocumented aliens. In the end, we believe that rewarding avoidance of the employment verification system under IRCA while at the same time denying relief to a worker injured as a result of a workplace violation of state labor laws constitutes that which is "unseemly" (dissenting op at 367).

*Emerging Issues for Undocumented Workers,* 6 U Pa J Lab & Emp L at 512).[8]

We recognize, of course, that plaintiffs' presence in this country without authorization is impermissible under federal law. Standing alone, however, this transgression is insufficient to justify denying plaintiffs a portion of the damages to which they are otherwise entitled. Under our precedent, civil recovery is foreclosed "if the plaintiff's conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation" (*Barker v Kallash*, 63 NY2d 19, 24 [1984]). Although recoveries have been denied to parties who have engaged in illegal activities, in those cases it was the work being performed that was outlawed (*see e.g. Spivak v Sachs*, 16 NY2d 163, 168 [1965]; *see also Berg v Wilpon*, 271 AD2d 629, 629-630 [2d Dept 2000]; *Murray v Interurban St. Ry. Co.*, 118 App Div 35, 37 [1st Dept 1907]), whereas here, the construction work itself was entirely lawful. Moreover, neither IRCA nor any other federal or state statute makes it a crime to be an employed but undocumented alien, unless the alien secured employment through the use of false work authorization documentation. We also find it significant that the records here do not indicate that administrative proceedings or criminal prosecutions have been initiated against plaintiffs based on their presence or employment in this country.

Nor do we believe that the issue of mitigation of damages creates a conflict between state labor law and federal immigration law. Under our common-law doctrine of mitigation of damages, recovery for future lost earnings is subject to reduction by the amount of compensation that the injured party could have earned despite the injuries inflicted by the tortfeasor (*see generally Matter of Bello v Roswell Park Cancer Inst.*, 5 NY3d 170, 173 [2005]). Mitigation of damages is not implicated when a worker's injuries are so serious that the worker is physically unable to work. Here, plaintiffs have alleged serious, permanent

---

8. The defendants in *Majlinger* assert that this observation should not apply to them since they did not employ Majlinger, but were the owners of the property, contractors or their agents. Although the dissent accepts this contention, it overlooks that Labor Law § 240 (1) and § 241 (6) impose a nondelegable safety duty even if the owner does not supervise or control the work site (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 560 [1993]). Allowing defendants to avoid paying damages on the ground that it was the employer who violated IRCA would, in essence, partially relieve defendants of their nondelegable duty and thereby produce a result that is inconsistent with Labor Law statutes.

injuries that impede their ability to be employed, allegations we must presume to be true at this preliminary stage of the litigation. Their situations are therefore readily distinguishable from the alien worker in *Hoffman*, who was not physically injured and could have sought new employment in violation of IRCA by tendering the same false documents that allowed him to work in the first place.

In any event, any conflict with IRCA's purposes that may arise from permitting an alien's lost wage claim to proceed to trial can be alleviated by permitting a jury to consider immigration status as one factor in its determination of the damages, if any, warranted under the Labor Law (*see e.g. Madeira v Affordable Hous. Found. Inc.*, 315 F Supp 2d at 507-508). An undocumented alien plaintiff could, for example, introduce proof that he had subsequently received or was in the process of obtaining the authorization documents required by IRCA and, consequently, would likely be authorized to obtain future employment in the United States. Conversely, a defendant in a Labor Law action could, for example, allege that a future wage award is not appropriate because work authorization has not been sought or approval was sought but denied. In other words, a jury's analysis of a future wage claim proffered by an undocumented alien is similar to a claim asserted by any other injured person in that the determination must be based on all of the relevant facts and circumstances presented in the case.[9]

In light of these considerations, defendants have not overridden the presumption against preemption afforded by the Supremacy Clause. In the context of Labor Law claims, a per se preclusion of recovery for lost wages would condone the employers' conduct in contravention of IRCA's requirements and promote unsafe work site practices, all of which encourages the employment of undocumented aliens and undermines the objectives that both IRCA and the state Labor Law were designed to accomplish. Moreover, there is no evidence in the records before us that plaintiffs (like the alien worker in *Hoffman*) tendered false documentation in violation of IRCA or that their employers satisfied their duty to verify plaintiffs' eligibility to work. In addition, plaintiffs have allegedly suffered physical injuries that have limited their ability to be employed, unlike the alien

---

**9.** Because we perceive no difference in the test that applies to lost wage recoveries by these distinct groups of individuals or the types of evidence that may be introduced by the litigants, we reject defendants' arguments premised on the Due Process and Equal Protection clauses.

worker in *Hoffman* who suffered no bodily injury whatsoever. We therefore hold, on the records before us in these Labor Law §§ 200, 240 (1) and § 241 (6) cases, and in the absence of proof that plaintiffs tendered false work authorization documents to obtain employment, that IRCA does not bar maintenance of a claim for lost wages by an undocumented alien.

Accordingly, in *Balbuena*, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated and the certified question answered in the negative. In *Majlinger*, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

R.S. SMITH, J. (dissenting). The Court holds today that New York courts may award damages to compensate a plaintiff for the loss of an opportunity to work illegally. I would hold that such a recovery is barred by the rule of New York law that the courts will not aid in achieving the purpose of an illegal transaction. I would also hold that, if New York law does permit such a recovery, it is preempted by federal immigration law as interpreted in *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]).

I

The arrangements Balbuena and Majlinger made with their employers violated the Immigration Reform and Control Act of 1986 (IRCA), and so long as they remain undocumented aliens, any arrangements they make with other employers in this country will be illegal also. The central purpose of IRCA was to keep people who entered the United States illegally, like Balbuena, or who entered legally but without authorization to work here, like Majlinger, from having jobs in the United States. As the United States Supreme Court made clear in *Hoffman*:

> "Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations." (535 US at 148.)

Such violations are subject to civil or criminal prosecution and penalties under federal law (*see* 8 USC § 1324a [a], [e], [f];

§ 1324c [a], [d]; 18 USC § 1546 [b]). The Court in *Hoffman* left no doubt that prohibiting the employment of undocumented aliens is the "critical" policy of the statute (535 US at 151). Many may disagree with that policy or regret the statute's consequences, but IRCA is Congress's chosen means of dealing with a national problem of huge importance. It is the duty of the courts, state as well as federal, to give effect to that policy choice and to recognize that the arrangements by which undocumented aliens are employed are illegal.

## II

The New York courts have long held that they will not award a plaintiff the benefit of an illegal bargain. We have referred to "the familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them" (*Szerdahelyi v Harris*, 67 NY2d 42, 48 [1986]). Thus in *Szerdahelyi* we held, applying a statute we found to be declaratory of the common law, that a lender who charged usurious interest could not recover her principal. In *Spivak v Sachs* (16 NY2d 163 [1965]), we held that a lawyer not licensed in New York could not collect a fee for legal work done in New York. In *Stone v Freeman* (298 NY 268 [1948]), we held that a vendor could not recover from a broker money that the broker was supposed to have given illegally to an employee of the purchaser, saying:

> "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose" (*id.* at 271 [citations omitted]).

In *Surgical Design Corp. v Correa* (290 AD2d 435 [2d Dept 2002]), the Appellate Division held that an employer could not enforce a notice-of-termination clause in an employment contract, where the contract called for the employee to perform illegal activities. And in *Murray v Interurban St. Ry. Co.* (118 App Div 35 [1st Dept 1907]), the Appellate Division held that the employee of a bookmaker could not recover the wages he lost as a result of his injury in a tort action against a third party.

Decisions like these are not based on a search for the equitable outcome of a particular case, or on a calculation of which

result will most contribute, in an immediate and practical way, to the enforcement of a particular statute or public policy. Rather, they are based on the sound premise that courts show insufficient respect for themselves and for the law when they help a party to benefit from illegal activity. As Justice Brandeis explained:

> "The court's aid is denied . . . when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress. . . . It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination" (*Olmstead v United States*, 277 US 438, 484 [1928] [dissenting op; citations omitted]).

Accordingly, in cases like these the courts do not ordinarily balance the benefit and harm, either to public or private interests, that will follow from an award, but simply dismiss the plaintiff's claim, though doing so may give a windfall to a defendant who has also acted illegally. "The law leaves the parties . . . where it finds them" (*Szerdahelyi*, 67 NY2d at 48 [citations omitted]).

Here, Balbuena and Majlinger are not quite seeking the enforcement of illegal contracts. But because the employment of Balbuena, Majlinger or others in their situation violates IRCA's prohibitions, their claims in tort actions for the loss of earnings from such employment are claims to obtain the benefit of illegal arrangements. Their claims thus put at risk the duty of courts in our legal system to avoid the promotion of illegality. This risk cannot be resolved by calculating the deterrence or incentive value of permitting recovery. Recovery is barred unless we are to hold that these cases are governed by an exception to the rule that courts do not award the benefit of illegal bargains.

That rule, important as it is, is not absolute:

> " '[w]here contracts which violate statutory provisions are merely *malum prohibitum*, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied.' " (*Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127 [1992], quoting

*Rosasco Creameries, Inc. v Cohen,* 276 NY 274, 278 [1937].)

But while this exception might apply in some cases involving undocumented aliens, it does not apply here.

There would be a much better argument for allowing Balbuena and Majlinger to recover if they had done work for which their employers had refused to pay them, and they were suing for their wages. In such a case, the injustice of denying recovery—embodied both in the hardship to the workers and the enrichment of the employers—would be gross, and it could be strongly argued that "the denial of relief is wholly out of proportion to the requirements of public policy." In such a case, we might consider whether we would characterize IRCA violations as "merely malum prohibitum" (evil because prohibited) rather than malum in se (evil in themselves), and allow recovery. A number of decisions in this state (*Nizamuddowlah v Bengal Cabaret,* 69 AD2d 875 [2d Dept 1979]; *Gomez v Falco,* 6 Misc 3d 5 [App Term, 2d Dept 2004]; *Ulloa v Al's All Tree Serv.,* 2 Misc 3d 262 [Nassau County Dist Ct 2003]) and in federal courts (*e.g., Flores v Amigon,* 233 F Supp 2d 462 [ED NY 2002]) hold that undocumented aliens may recover at least some compensation for work they have actually performed, and I do not imply that we should hold otherwise.

But these cases are different. Neither Balbuena nor Majlinger is seeking compensation for work actually performed. In fact, neither is even suing his employer. Each of them is suing third parties—in Balbuena's case, the owners of the construction site and in Majlinger's several entities alleged to be site owners and/or general contractors—who had no involvement with any violation of the immigration laws. They claim that defendants are liable for personal injuries that plaintiffs suffered, and that defendants should pay damages including the amount that plaintiffs, but for their accidents, would have earned in their illegal employment. Balbuena's employer is named as a third-party defendant, but it is not clear from the record whether defendants' claim over against the employer will succeed. Majlinger's employer is not a party at all.

Thus these are not cases, as some involving illegal arrangements are, in which to dismiss the claim is to give a windfall to a defendant at least as guilty of wrongdoing as the plaintiff, or in which to deny recovery is to leave a plaintiff uncompensated for work actually done. The wrong for which Balbuena and Majlinger seek compensation in the form of lost earnings is that

their injuries have *prevented* them from working in the United States—exactly the result that IRCA was intended to accomplish. I do not see how, except by rejecting the policy on which IRCA is premised, we can say that denial of the remedy plaintiffs seek is out of proportion to the requirements of public policy.

When courts permit parties to recover on the basis of illegal transactions, the consequences can be unseemly. For example, the majority suggests telling a jury that it may "consider immigration status as one factor in its determination of the damages" (majority op at 362). But what does that instruction mean? Is the message: "The plaintiff's damages depend on his chances of getting caught; the more likely he is to evade the authorities, the more damages you may award"? Or, if the jury is supposed to decide how much weight to give to IRCA policies, then the message is: "A violation of the law is only as important as you want it to be." The only instruction that is not, at best, a bit embarrassing to the system is one that says in substance: "You may not award any damages for lost earnings in employment that would have violated the immigration laws." The Court today holds that such an instruction may not be given.

A still more vexing problem is presented by what is loosely called a plaintiff's "duty" to mitigate damages—more precisely, the rule that a plaintiff who does not mitigate will suffer a reduction in damages. Is a plaintiff in a case like these—who may be disabled, say, from construction work but not from less strenuous activity—required to mitigate by seeking alternative illegal employment? May he avoid a reduction in his damages by declaring that he has decided, belatedly, not to seek any job for which he may not lawfully be hired? It is surely unfair to defendants to hold that lost illegal wages may be recovered, but that only legal wages may be considered in mitigation; yet it also seems intolerable to hold that the law will punish a plaintiff for failing to violate the law. The majority tries to finesse the question by assuming, if I read its opinion correctly (*see* majority op at 361), that plaintiffs in these two cases are totally disabled from work. But they may not be so, and certainly not all plaintiffs who make such claims will be. The majority offers no clue as to how mitigation issues can be handled when they arise.

In sum, I would hold that an award of lost earnings based on employment prohibited by IRCA would carry out the purpose of an illegal transaction and is therefore impermissible under established principles of New York law. I would decline to follow

the Appellate Division cases (*Collins v New York City Health & Hosps. Corp.*, 201 AD2d 447 [2d Dept 1994]; *Public Adm'r of Bronx County v Equitable Life Assur. Socy. of U.S.*, 192 AD2d 325 [1st Dept 1993]) that hold otherwise. Thus, I do not think it is necessary to reach the preemption issue.

## III

The majority assumes with little discussion that New York law, if not preempted, would permit recovery of lost earnings in these cases, and devotes its analysis almost wholly to the federal preemption issue. I disagree, as I have explained, with the majority's view of New York law. I also disagree with the majority's decision on preemption.

The preemption issue, as all agree, depends on the interpretation of *Hoffman*, in which the Supreme Court held that a National Labor Relations Board award of back pay "to an undocumented alien who has never been legally authorized to work in the United States . . . is foreclosed by federal immigration policy, as expressed by Congress in [IRCA]" (535 US at 140). Defendants in these cases argue that what is true of an NLRB back pay award must also be true of the awards for lost earnings that Balbuena and Majlinger seek. If one is "foreclosed by federal immigration policy," so is the other. Thus, defendants argue, state law, to the extent that it permits these plaintiffs to recover lost earnings, "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" and is therefore preempted (*California Coastal Comm'n v Granite Rock Co.*, 480 US 572, 581 [1987]). I think this argument is correct.

The majority tries to distinguish *Hoffman* on the ground that the employee involved in *Hoffman*, unlike plaintiffs here, presented his employer with false documents that purported to authorize him to work. *Hoffman*, the majority says, "is dependent on its facts, including the critical point that the alien tendered false documentation" (majority op at 360). I do not think this narrow reading of *Hoffman* is consistent with the Supreme Court's opinion read as a whole.

The *Hoffman* court's statement of its holding at the outset of its opinion is the broad one I quoted above: an award of back pay "to an undocumented alien who has never been legally authorized to work in the United States . . . is foreclosed by federal immigration policy" (535 US at 140). Later, in explaining the reasons for its holding, the Court specifically refers to both of the possible ways in which an undocumented alien can

obtain employment: "Either the undocumented alien tenders fraudulent identification . . . or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations" (535 US at 148). The Court makes clear that *both* of these "directly contraven[e] explicit congressional policies" (*id.*). The Court then again states its holding in broad terms: "We find . . . that awarding backpay to illegal aliens runs counter to policies underlying IRCA" (*id.* at 149). And again, near the end of its opinion: "We therefore conclude that allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA" (*id.* at 151). The Court does mention, and at times emphasizes, the fact that the employee in *Hoffman* used false documentation, but the Court conspicuously fails to say that the case would, or might, come out the other way if that fact were not present.

I agree with the majority here that the conduct of the undocumented alien in *Hoffman* was worse than the conduct of Balbuena and Majlinger. He committed a crime, and they did not. If Balbuena and Majlinger were suing their employers—who, on the facts of these cases, may well have acted criminally in hiring them without demanding documentation from them—the difference in culpability might be relevant; as I suggested above, a case in which a lesser offender is suing a greater one may sometimes (though not always) qualify for an exception to the general rule that lawsuits based on illegal transactions will not be countenanced. But, as I said above, neither of these cases is such a case, and I find the majority's attempt to draw an analogy totally unpersuasive. The idea, suggested in the majority opinion (at 361 n 8), that the employers' violations of the immigration laws may be imputed to defendants here—the owners of the job sites and the contractors who worked on them—under New York Labor Law § 240 (1) and § 241 (6) seems to me to lack any support in the text of those statutes, in precedent or in common sense.

The preemption issue here depends not on whether Balbuena and Majlinger committed criminal violations of IRCA, but on whether awarding them lost earnings will undermine IRCA's policy. *Hoffman* makes very clear, I submit, that the policy behind IRCA is that undocumented aliens may not be employed in the United States, and that an award of back pay—from which an award of lost earnings is indistinguishable—undermines that policy. I would therefore hold that *Hoffman*

controls this case, and that federal immigration law preempts any New York law which would otherwise permit a lost earnings award in these cases.

## IV

Accordingly, I would affirm the order of the Appellate Division in *Balbuena v IDR Realty LLC*, and would reverse the order in *Majlinger v Cassino Contr. Corp.*

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and ROSENBLATT concur with Judge GRAFFEO; Judge R.S. SMITH dissents and votes to affirm in a separate opinion in which Judge READ concurs.

In *Balbuena v IDR Realty LLC:* Order reversed, etc.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and ROSENBLATT concur with Judge GRAFFEO; Judge R.S. SMITH dissents and votes to reverse in a separate opinion in which Judge READ concurs.

In *Majlinger v Cassino Contr. Corp.:* On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order affirmed, with costs, and certified question answered in the affirmative.